## Calhoun *against* Hays.

8ws127
135  371
8ws127
151  486
8 WS 127
e219        278

If a deposition be taken by one party, it is competent for the other to read such parts of it as tend to prove his case, leaving to the other party the right to read the other parts if they be legal evidence for him.

In an action of ejectment between two of several tenants-in-common between whom, as alleged by the defendant, there had been an amicable partition, it is competent for him to give in evidence a release of the other parties to the partition in order to establish the fact in issue.

A parol partition of lands between tenants-in-common who derive their title by descent, when fair and equal, and followed by a due execution of it, is binding upon all, whether they be femes-covert, their husbands joining them, or minors, with the assent of their guardians or not.

ERROR to the District Court of *Allegheny* county.

This was an action of ejectment by John K. Calhoun and Mary his wife against Robert Hays, David Hays, and William Lynch, for the undivided eighth part of a tract of land, in which both parties claimed title under Robert Hays, their common ancestor. In answer to the claim of the plaintiffs, the defendants alleged that by a family arrangement made between all the heirs of Robert Hays, deceased, in 1826, for the purpose of dividing their property and making a final settlement, the plaintiffs agreed to accept their

[Calhoun v. Hays.]

share in money: that they accepted the defendants' note for their interest, released their claim to the estate and had been fully paid, and had therefore no right to recover in this suit. To this the plaintiffs responded that they were not legally estopped by the writings signed on that occasion, and that they did not assent to it or receive the money.

It appeared that one of the sons had petitioned the Orphans' Court for a writ of partition and valuation of the estate, and that a jury had been summoned, who met and could not agree upon a valuation of the land: whereupon the heirs, being of full age, agreed themselves in writing that the land should be assumed as valued by the Orphans' Court at $10.50 an acre. The proceeding in the Orphans' Court was not pursued further, but the heirs agreed to have a meeting and settlement of the whole estate, as well the lands which were the subject of the proceeding in the Orphans' Court, as lands in other counties, some out of the State and the personal property of their father. It appeared that a statement was drawn up by a justice of the peace in the shape of an administration account, charging the administrators with all the land at the value agreed upon, as also the account of the personal estate. One of the sons who had been advanced by his father in his lifetime, brought his tract into hotchpot; each of the heirs was charged with such of the personalty as they had severally received, and the share of each valued at $769. It appeared also that David and Robert agreed to take the tract in dispute; that the other brothers took the property in Ohio and Kittaning; that notes were given by those who received land to those who preferred taking their shares in money; that releases were signed by all the heirs to those that received the lands, except by John K. Calhoun, by whom it was alleged by the defendants a release had also been executed, but that it was lost: this was denied by the plaintiffs, and was referred as a fact to be determined by the jury.

On the trial of the cause several questions arose as to the admission of evidence, in which exceptions were taken to the opinion of the court, and were the subjects of the assignment of error. Points were also put by the plaintiffs upon which the court were requested to instruct the jury; all of which sufficiently appear in the opinion of the court. A verdict was rendered for the defendants.

*Woods* and *M'Candless*, for plaintiffs in error.
*Hampton*, for defendants in error.

The opinion of the Court was delivered by

KENNEDY, J. — The first error assigned is an exception to the court's admitting the deposition of William Hays to be read in evidence. 1. Because his deposition was not regularly taken. 2.

Because he was interested in the result of the trial of the cause, and therefore not a competent witness. 3. Because the matters testified to by him were not admissible. The objection to the mode of taking the deposition is without even the shadow or colour of ground to support it. It was duly taken under a commission awarded for that purpose by the special order of the court, with interrogatories thereto annexed by the defendants, in proper form and not leading, as alleged by the plaintiffs, as, also, cross-interrogatories on the part of the plaintiffs. The plaintiffs, likewise, joined therein, by naming a commissioner, who attended and joined in executing it. The objection to the competency of the witness was, that he, as one of the heirs of his father, Robert Hays, deceased, had joined with some of his brothers and sisters, other heirs of the same, in executing a release of all their interest and estate in the land in dispute, which descended to them from their father, and to the two defendants, Robert Hays and David Hays, two other heirs and sons of the same father. It is unnecessary here to decide whether, upon a recovery had in this case by the plaintiffs, the witness would have been bound by his covenant of warranty, contained in the deed of release, to have made good, or to have contributed to the loss of the defendants. For it might be a question, perhaps, whether the release ought to be construed so as to extend beyond the occasion for giving it, and what might naturally be supposed to have been the design and intention of the parties at the time : which may be, that each of the releasors should release his own individual interest in the land, and be responsible for it alone. If the covenant contained in the release bound him no further than this, it is plain that a recovery by the plaintiff, in right of his wife, as one of the heirs of the said Robert Hays, deceased, would not render the witness liable for any loss which the defendants might thereby sustain. The decision, however, of this question is rendered wholly unnecessary, as the defendants, Robert Hays and David Hays, executed and delivered a deed of release to the witness before he gave his testimony under the commission, releasing him from all liability to them, by reason of anything contained in the release which he, with some of the other heirs of Robert Hays, deceased, executed in their favour. The first error is, therefore, not sustained.

The second error is an exception to the admission of a receipt given by the plaintiffs for money which they received of the defendants, Robert and David Hays; and a note which the latter gave to the wife of the plaintiff for the balance coming to her, in full of her interest in the real and personal estate of her father, as was alleged. We can perceive no valid objection to this testimony. Testimony was given tending to establish an agreement between the widow of Robert Hays, deceased, and his heirs, for the partition of his real estate amongst them; and testimony, in connection with the receipt and the note, was also given, going

[Calhoun v. Hays.]

to show they were given in carrying the agreement for the partition into effect. And, whether the agreement for the partition was verbal or written, the testimony objected to was admissible, because a verbal agreement for the partition of real estate is good and binding on the parties, if carried into execution. Therefore, the testimony being to show that the agreement for the partition of the estate was carried into effect, and particularly by the plaintiffs who were claiming to have it divided again, and thereby get a double portion of it, was clearly admissible.

The third error is an exception to the admission of the testimony of Jane Kline, which was objected to for the same reasons as that of William Hays, which has been shown to have been properly received.

The fourth error is an exception to the reading, by the defendants, of certain parts of the deposition of Agnes H. Martin, without reading the whole of it, which deposition had been taken by the plaintiffs. Supposing the parts omitted to be read by the defendants to be admissible, it was certainly competent for the plaintiffs to read them, and thus to have all the benefit to be derived therefrom, the same as if they had been read by the defendants. If the deposition contained anything favourable to the plaintiffs, it was, perhaps, rather favourable than otherwise *to* them that the defendants first read certain portions of it in evidence, as it tended, in some degree, to show that they considered her not altogether destitute of credibility. There was no error, therefore, committed by the court in permitting the defendants to read such portions of the testimony taken by the plaintiffs as best suited their purpose, leaving the plaintiffs, if they chose, to read the residue.

The fifth error is an exception to the admission of a release, dated the 2d of June 1827, executed and acknowledged by other heirs of Robert Hays deceased, to Robert Hays and David Hays, two of the defendants, but not executed by the plaintiffs. We think that it was properly received and read in evidence to the jury, because it showed that the agreement for partition of the real estate of the deceased Robert Hays, of which evidence was given, was by means of the release carried into execution so far as it went; and also because it showed the tenor of a release testified to have been executed by the plaintiffs for the same purpose, drawn by the same scrivener, and most likely of the same tenor with that excepted to, which was lost or could not be found.

The sixth error is an exception to the court's admitting the same release as that mentioned in the fifth error to be read in evidence in connection with the answer of William Hays to the seventeenth interrogatory in chief propounded to him, and annexed to the commission under which his testimony was taken. That it was admissible has been already shown in our answer to the fifth exception. For it being testified that a release, drawn prior to it,

[Calhoun v. Hays.]

by the *same* scrivener, who had since *died,* for the *same* purpose; had been *executed by the plaintiffs,* as also others of the heirs of the said Robert Hays deceased; but was *lost;* the release offered to be read and objected to, taken in connection with the answer of William Hays to the seventeenth interrogatory in chief, was some evidence at least to establish the *object, design* and *purport* of the lost release, which, if it could have been procured, would have been clearly evidence against the claim of the plaintiffs of a very decisive character.

The seventh error is an exception to the answers given by the court to the second, third, fourth and fifth points submitted by the counsel of the plaintiffs. By these points the court was requested to instruct the jury, that the release signed by the wife of the plaintiff, not being acknowledged according to law, could not bar the recovery of the plaintiffs; and should the jury believe there was a parol sale of the wife's interest in the land, still, unless followed by a possession taken in pursuance of the contract and the payment of the purchase money, the case came within the statute of frauds, and therefore no interest passed to the defendants. That the plaintiffs having shown a legal title in them, could not be devested of it, except by clear and conclusive proof of a parol sale, and possession taken in pursuance of the contract: and that the husband's verbal assent to the execution of the release would not render it valid unless acknowledged in the manner prescribed by law. These points, in our opinion, were answered by the court as favourably at least as the plaintiffs had any right to claim. The court instructed the jury, although the release signed by the wife of the plaintiff was not acknowledged in the manner the law requires, yet taken in connection with other facts, of which testimony had been given, it would be sufficient to bar the recovery of the plaintiffs. That as a general principle, it was true that the wife's interest in land could not be disposed of by a parol sale thereof, unless followed by possession taken in pursuance of the contract and payment of the purchase money, as otherwise it would come within the statute of frauds. But still there were other ways by which a person's title to land might be devested, that had come to him or her by descent. The Orphans' Court could devest the title of a married woman without her assent, and convert it into personalty; and, in 1826, could have ordered it to be paid to her husband, who might have consented that it should be paid to his wife, and the receipt of either for the money, in such case, would be a complete discharge of all right on the part of either or both, afterwards, to either the money or the land. That a minor or a married woman might make partition, even without deed, and devest their title to lands which came to them by descent. That it was true, in general, that a deed signed by the wife alone, whether *properly* or *improperly acknowledged,* would not, *per se,* convey the title of either the husband or herself; but

there was testimony in the case before them, taken in connection with the husband's verbal assent to the execution of the release by his wife, which, if believed, would in equity bar the plaintiffs' recovery.

Taking all the instruction thus given by the court to the jury, we are decidedly of opinion that the plaintiffs have no reason to complain of it. The right which the plaintiffs had to the land in question having been acquired by descent, in conjunction with the other children of Robert Hays, deceased, including the two defendants, Robert Hays and David Hays, it was in the power of these defendants, at any time, by an application to the Orphans' Court, to have compelled the plaintiffs 'to make a partition of it; and therefore, being compellable by law to do so, they might well do it without process of law; and, if made equally between them, it would for ever afterwards be binding on both husband and wife. And the partition, if equal at the time it was made, would be good, however unequal it might become afterwards by subsequent events. *Co. Litt.* 171 *a*; *Fitz. N. B.* 62, *F.* Neither is it essentially requisite that a voluntary partition should be by deed, in order to make it binding; as between parceners, at least, it is good if made by parol without deed. *Litt., sec.* 250. And it is so between tenants in common, where they execute the same in severalty by livery. 1 *Inst.* 139 *a*; *Docton* v. *Priest, (Cro. Eliz.* 95); *Ebert* v. *Wood*, (1 *Binn.* 216). In this last case a partition between tenants in common, made by parol, and possession taken by each of his respective property, was holden by this court to be good. In making partition of an intestate's real estate among the heirs, it is not necessary that a certain portion or allotment thereof in kind should be given to each heir. This, under process from the Orphans' Court, is only done when the estate will admit of such a division without injuring or spoiling the whole; and if to divide it even into two parts would produce such injury, the whole must be valued; and then the partition is made by giving the estate to some one or more of the heirs, if any one or more of them will agree to take it at the valuation so made thereof, upon his or their paying, or securing to be paid, to the other heirs their respective proportions of the valuation money. But if none of the heirs will take it at the valuation, the court, at the request of any one of them, will direct it to be sold, and the money arising therefrom to be distributed among them. Seeing, therefore, that any one of the heirs may compel a partition of the estate thus to be made by legal process, it follows from the established doctrine laid down above, that if it be done by the agreement of the parties, without legal process, and be fair and equal, it will be good and binding upon all, whether femes covert or not, if their husbands join, or minors, if with the consent of their guardians. That the partition, as claimed to have been made by the defendants in this case, was equal at the time it was made, does not

appear to have been denied or controverted; and that there was abundant testimony given on the trial, going to show that a parol agreement for a partition of the estate was made, in which all the parties joined, and going to show, also, that it was afterwards carried into execution, cannot well be doubted. It would also appear from the evidence, and so the jury must have found, that the plaintiffs received their full purpart of the estate; or, if they had not, it is not probable that they would have acquiesced so long in the defendants' enjoyment of the land in question, seeing them improving it, too, as their own, by a large expenditure of money and labour laid out and bestowed upon it. To permit the plaintiffs to recover under such circumstances would be allowing to them a double portion of the estate, beside giving them a full portion of all the labour and money done and expended by the defendants in improving it. This would be the very height of injustice, and contrary to every principle of equity.

There is nothing in the remaining errors assigned.

Judgment affirmed.