### ARAD T. LINFIELD *vs.* OLD COLONY RAILROAD CORPORATION.

The Rev. Sts. *c.* 39, § 78, requiring every railroad corporation to carry a bell on every engine passing upon "their road," &c. applies to a railroad corporation who have taken a lease of a railroad owned by another corporation, and are running their own engines upon it under such lease.

Merely ringing a bell when an engine approaches a railroad crossing, as required by Rev. Sts. *c.* 39, § 78, will not excuse a railroad company from the consequences of a collision at such crossing, if the jury think that the company ought, under the circumstances of the case, to have used other precautionary measures to avoid a collision, and unreasonably neglected so to do.

If one party takes a deposition on interrogatories, a part of which is for the purpose of meeting certain expected testimony from the adverse party, and does not otherwise intend to use such part, he must accompany the interrogatories with a distinct notice in writing of his purpose in taking it; or such adverse party may require the whole to be read to the jury, although he has not introduced the expected testimony, to meet which the deposition was taken.

TRESPASS on the case to recover damages for injuries to the person and property of the plaintiff in consequence of a collision between a train of dirt cars belonging to the defendants, and in the control of their servants, and a horse and wagon owned and driven by the plaintiff, which collision happened at a crossing on the South Shore Railroad. Plea, the general issue.

The declaration contained two counts. The first count

was founded on Rev. Sts. *c.* 39, §§ 78, 81, and alleges that it was the duty of the defendants then and there to have had upon their engine a bell of at least thirty-five pounds in weight, and to have caused said bell to be rung at the distance of at least eighty rods from the crossing where said accident happened, and to be kept ringing until said engine had passed said crossing; and avers that the defendants unreasonably neglected to have such bell upon their said engine, and that the defendants' servants then having the care and management of said train of dirt cars, unreasonably neglected to ring any bell upon said engine at the distance of eighty rods from said crossing, and to keep the same ringing until the said crossing was passed, and that, in consequence thereof, the plaintiff received the injuries complained of.

The second count alleges that the defendants, by consent of the South Shore Railroad Company, were moving and pushing along the South Shore Railroad, and across said crossing a long train of dirt cars, by means of an engine behind said cars, and that said train of dirt cars and engine belonged to the defendants, and were under the control of and managed by their servants; and avers that said train of cars and engine were so improperly, negligently, and insufficiently made, fitted out, and equipped, and so carelessly, negligently, unskilfully, improperly and unlawfully run, moved controlled, managed, directed, and guided, that by reason thereof the said train of cars came in collision with the plaintiff's wagon and body, whereby he was injured and damaged as in said count set forth.

It appeared in evidence at the trial before *Dewey*, J. that the collision complained of occurred between a train of gravel cars belonging to the defendants, and under the control and management of their servants, and a horse and wagon owned and driven by the plaintiff; that at the time of the collision said train of cars was running on the railroad belonging to the South Shore Railroad Company, and that the accident happened, 3d of July, 1849, on a turnpike or road in Braintree, where the same is crossed by said railroad on a level therewith. The plaintiff also offered in evidence an indenture.

made September 20, 1847, between the defendants and the South Shore Railroad Corporation, a copy of which, so far as material, is set out in the margin,[1] and also an agreement made between said corporations, March 31, 1849, in which the South Shore Railroad Company said to the defendants " We now propose to you to commence the lease of the South Shore Railroad on the 1st of April next, and we will pay all expenses of keeping up roadbed, and track until the 1st of June next, and if the South Shore road shall not, in the year ending April 1, 1850, earn six per cent. on its cost, we will pay such expense one month longer. And we further agree that the South Shore Railroad shall be finished by you and for finishing the same, to allow you twenty-five cents per yard for all the gravel you shall move to surface up and complete the same, and will pay for all expenses incurred in making proper turnouts, switches, &c. All rents collected by us from our buildings and land to be credited to the account of rent under the lease. If we should differ as to the mode of finishing, the umpire under our contract, which is not hereby waived, is to decide. In determining who shall pay the road

---

[1] This indenture witnesseth, That the said South Shore Railroad Company do hereby covenant and agree to, and with the said Old Colony Railroad Corporation, that they will proceed with all reasonable and convenient dispatch to locate and construct a railroad from a point of intersection with said Old Colony Railroad, in North Braintree, to its termination in Cohasset; to grade and finish the roadbed, culverts, and bridges, and supply and lay the superstructure and rails, with suitable and necessary turn-outs, side-tracks, and switches,—to build and complete all needful depots, engine and carhouses, and signs at road-crossings, and generally to construct, make, and complete their said railroad in good running order, ready for use. And when their road is so completed and finished, they further covenant and agree with said Old Colony Railroad Corporation that they will make, execute, and deliver to them a good and valid lease of their said railroad, for the term of time, and upon the conditions and stipulations herein set forth.

And the said Old Colony Railroad Corporation, on their part, hereby covenant and agree. to and with the South Shore Railroad Company, that when their said road shall be completed and finished, as above set forth, in good running order, ready for use, they will take and receive a lease of said South Shore Railroad, upon the terms and conditions herein set forth.

And said parties hereby mutually covenant and agree, to and with each other, that said lease shall be made by the said party of the first part, and taken and received by said party of the second part, upon the following terms, conditions, and stipulations: [Not material to this case.]

repairs for June, 1849, the earnings are to be computed as the Fall River earnings are, under the contract with the Old Colony and the Fall River Railroad Company ; any profit on our arrangement over cost, wear, expenses, and interest to be taken into account." And it also appeared that at the time of the collision, said gravel train was being run on said railroad by the defendants in constructing and finishing said railroad under said agreement.

It further appeared in evidence that at the time of the accident, said gravel cars were empty, and that they were being pushed along by the engine which was in the rear of the said train of cars, and that there was not at the gravel pit or at the place where the gravel was dumped, or between said places any side-tracks or turn-tables whereby the engine could be changed from one end of the train to the other, and that in the execution of the work under this contract the defendants hauled the loaded train from the gravel pit to the dumping ground, and pushed back the empty cars.

The plaintiff offered evidence tending to show that the defendants' agents, in running said gravel train, had failed to ring the bell on the engine while approaching said crossing where and when said collision occurred, and that the bell itself was a poor one, and not suitable for the purpose, but the evidence upon this part of the case was conflicting.

It further appeared that there was no gate erected at said crossing, and that no one was stationed there to inform persons of the approach of the train, and that no notice of any kind was given of the approach of the train in this case, excepting such as came from the bell itself, if rung, and the noises incident to the motion of the train.

The defendants requested the presiding judge to instruct the jury, 1. That so far as the suit is founded and proceeds upon the Rev. Sts. c. 39, §§ 78, 81, a non-compliance therewith, if established, renders the South Shore Railroad Company alone liable to plaintiff. 2. That under the written contract between defendants and the South Shore Railroad Company, put in evidence by the plaintiff, for any neglect or want of care while the work was being done pursuant

thereto by reason of the trains being backed instead of the more common method, the South Shore Railroad Company are alone responsible. 3. That under the written contract between the defendants and the South Shore Railroad Company, for any neglect or want of care while the work was being done, pursuant thereto by reason of any neglect to give notice at the crossing other than that which could be given from the engine and train itself, the South Shore Railroad Company are alone responsible. But the presiding judge ruled, that if the defendants were running their engine and cars on the South Shore Railroad under a lease or contract from the said South Shore Railroad Company, and running the same and using the road in their stead and place, it would be the duty of the defendants, while thus using the road, to comply with the duties required by Rev. Sts. c. 39, § 78, as to ringing a bell; and in case of their neglect so to do, if a collision should occur with a traveller on the public turnpike at a crossing, occasioned by said neglect to comply with said statute provision, and the traveller having conducted with ordinary care, and not by any negligence of his contributed to the injury received, the defendants would be responsible for such neglect to ring the bell.

The jury were further instructed that it was not unlawful for the defendants to back their train of dirt cars over said road, and that this of itself would not charge the defendants; but if the backing of cars was attended with greater hazard and danger, and exposure to a collision with a traveller on the turnpike at the crossing, then the defendants would be holden to use greater care and precaution when thus using their cars: That what were reasonable and proper precautions, and what omission of precautionary measures would amount to negligence, was to be decided by the jury upon all the circumstances in the case: That a mere compliance with the requirements of Rev. Sts. c. 39, § 78, as to ringing a bell, would not excuse the defendants from the use of reasonable care in other respects to avoid collisions at crossings of other roads, where the circumstances of the case render it reasonable for them to take other precautions to protect travellers on a pub-

lic highway from collision at a crossing of such highway at even grade with the railroad. Such may be the formation of the ground and existence of obstructions as to prevent the traveller on the highway from the opportunity of guarding against a collision by observing the approach of the train, and also to prevent a bell, if rung, from being heard; whether, under the circumstances shown in the present case, reasonable care and diligence on the part of the defendants required them to have taken other precautionary measures, besides ringing the bell, to guard against a collision with travellers on a public road that was to be crossed by the train, were questions to be decided by the jury upon all the evidence in the case.

In the course of the trial, the defendants objected to interrogatories 20 and 21, and answers thereto, in the deposition of one A. W. Tilden, and the objection was sustained by the presiding judge, and is only material here as connected with the question raised as to the deposition of another witness, Miles Burlingame. The deposition of Burlingame was offered in evidence by the defendants, but they insisted upon not reading to the jury the 20th and 21st interrogatories and answers, [the nature of which is not material,] on the ground that these interrogatories were framed to meet the answer of said Tilden to the 20th and 21st interrogatories propounded by the plaintiff, in case the court should deem said last-mentioned interrogatories competent. Said interrogatories to said Burlingame were prepared and filed after the deposition of said Tilden had been taken, opened and filed in court; but there was nothing upon the face of the interrogatories proposed to said Burlingame, indicating that said 20th and 21st interrogatories were put *de bene esse* to be used only in case the said 20th and 21st interrogatories to said Tilden were competent. The judge ruled that the defendants must read the whole deposition, including the answer of said Burlingame to said 20th and 21st interrogatories, and they were accordingly read, agreeably to the request of the plaintiff. After the evidence was closed, the plaintiff offered to read the answers of Tilden to 20th and 21st interrogatories originally excluded, which offer was rejected by the defendants.

If the above rulings were erroneous, the verdict, which was for the plaintiff, may be set aside, and a new trial granted.

*S. Bartlett & D. Thaxter*, for the defendants.

*R. Choate & J. L. English*, for the plaintiff.

METCALF, J.   The first count in the plaintiff's declaration is founded on the Rev. Sts. *c.* 39, §§ 78, 81.   Section 78 requires every railroad corporation to cause a bell, of at least thirty-five pounds in weight, to be placed on each locomotive engine passing upon their road, and to be rung at the distance of at least eighty rods from the place where said railroad crosses any turnpike, &c. upon the same level with the railroad, and to be kept ringing until the engine has crossed such turnpike, &c.   Section 81 provides that if any such corporation shall unreasonably neglect or refuse to comply with said requisition, it shall be liable for all damages sustained by any person by reason of such neglect.

The first question discussed at the argument of this case was, whether the defendants are liable, under these sections, or whether the action can be maintained only against the South Shore Railroad Company; and our opinion is that the defendants are liable.   The indenture executed by the two corporations on the 20th of September, 1847, and their agreement made on the 31st of March, 1849, constituted a lease of the South Shore Railroad to the defendants, which took effect, as such, on the 1st of April, 1849.   Bac. Ab. Leases, K. ;  1 Platt on Leases, 579 *& seq.*   We need not inquire whether a railroad corporation can make a valid lease of its road, either to a like corporation or to individuals, without legislative authority expressly conferred;  for the legislature, by a statute passed before the happening of the accident now in question, (*St.* 1849, *c.* 163,) expressly authorized the defendants "to carry out their contract" of September 20th, 1847, for a lease of the South Shore Railroad.   The lease, then, being valid, we cannot doubt the liability of the defendants for any neglect or refusal by them to comply with the requisitions of the Rev. Sts. *c.* 39, § 78.   On the 1st of April, 1849, and thenceforth, the railroad which was leased to them, was "their road," within the just meaning of that section.   Nor

can we doubt their liability for an injury caused by any other culpable neglect of theirs in the management of their engines on the same road. For railroad corporations are bound to use all reasonable care, besides that of ringing a bell, &c. as directed by statute, to avoid collision when their engines are crossing a turnpike or other way. *Bradley* v. *Boston & Maine Railroad,* 2 Cush. 539. And so the jury were instructed in the present case. Exception is taken, however, to the instructions given on this point. It is said that they were such as authorized the jury to find that it was the duty of the defendants to have had a gate at the crossing, if that was a reasonable precaution for the place and circumstances, and to return a verdict against them, because they had not a gate; whereas, by the Rev. Sts. *c.* 39, § 80, and *St.* 1846, *c.* 271, § 2, railroad corporations are not bound to erect gates at crossings, unless specially required so to do by county commissioners. But we see no error or defect in the instructions. The judge left it to the jury to decide whether precautionary measures, in addition to the ringing of a bell, ought to have been adopted by the defendants to prevent a collision, and whether, under the circumstances of the case, they used reasonable care to prevent it. The verdict, therefore, shows that the defendants had not adopted reasonable precautionary measures; and we cannot inquire what might have been the views of the jury as to the specific measures which the defendants ought to have adopted. It is certain that nothing in the instructions warranted the jury to find the defendants guilty because they omitted to do that which the law did not require them to do.

Exception is also taken to the ruling of the judge that the plaintiff had a right to require that the answers of Burlingame, the defendants' witness, to the 20th and 21st interrogatories put to him, should be read to the jury. Perhaps it is immaterial in this case whether that ruling was right or wrong, because the answers of the witness were such as could neither do the plaintiff any good nor the defendants any harm. But as the point has been argued, and may hereafter be of some practical importance, we have considered it, and have come to the conclusion that a party has a right to such of the

testimony contained in a deposition taken by his adversary, as he may deem favorable to himself, if it be testimony which it is competent for his adversary to introduce. When testimony is given *viva voce,* all that a witness says on his examination in chief, if it be competent testimony, must be taken as he states it, although it operates against the party who calls him ; and if, on cross-examination, his answers to questions, which the party calling him could not put, favor that party, those answers cannot be suppressed; each party being entitled to the benefit of all the legal testimony that favors his cause,.from whatever witnesses it proceeds. The same rule is applicable, generally, to testimony given in depositions. *Breyfogle* v. *Berkley,* 16 S. & R. 264; *Calhoun* v. *Hays,* 8 Watts & Serg. 127. Is a case like the present within this rule, or an exception to it ? The defendants insist that as the interrogatories in question were filed for the sole purpose of meeting, by the answers thereto, the testimony of Tilden, in his deposition taken by the plaintiff, and as his testimony was excluded by the judge, they ought not to have been required to submit Burlingame's answers to the jury. The plaintiff, on the other hand, insists that he had a right to have those answers read to the jury, because the defendants did not file, with the interrogatories, a notice that they were filed *de bene esse,* and that the answers were not to be used, except to meet Tilden's testimony. He admits that if such notice had accompanied the interrogatories, he could not have rightfully called for the reading of the answers. And we are of opinion that when one party takes a deposition on interrogatories, for the purpose of meeting the testimony of a witness who has deposed, or testimony which he may expect the other party will produce, but does not intend to use the answers thereto, unless the other testimony is introduced, he must accompany the interrogatories with a distinct notice in writing that his purpose is merely to meet the testimony of his adversary's witness or witnesses ; and that if this is not done, the answers must be read to the jury, if required by the other party. We deem this the most eligible rule in such cases. It will save to each party all his just rights, and prevent all unfairness and surprise.

It was suggested, in argument, that the judge should have decided, upon inspection or upon the affidavit of the counsel who filed the interrogatories, that they were filed for the purpose of meeting Tilden's testimony; and that, in all cases, the judge, at the trial, should decide whether or not, upon the face of interrogatories, and upon examining the other evidence in the case, it appears that they were filed merely for the purpose of meeting a contingency. But we do not adopt these suggestions. In our judgment, the course which we have indicated is much preferable, as a matter of practice. It is recommended by its simplicity, convenience, and certainty; and it will prevent the necessity of a judge's trying questions of fact, or exercising a discretionary power for want of a fixed rule to guide him. *Judgment on the verdict.*