## Totten's Appeal. McAboy's Appeal.

*Power of guardian to act for several wards on partition of real estate.*

1. A single guardian may act for several wards in all matters relating to their estates, including partition.

2. Therefore, where partition of the real estate of several minor children had been made, on the petition of their guardian, and his acceptances for them, together with the inquisition and valuation, had been confirmed absolutely, it was error in the court to set aside the inquest and proceedings under it on the ground that the guardian could not act for more than one ward, especially where more than two years had elapsed since the inquest, and the parties had adjusted their lines, made improvements, and purchased adjoining lands.

Appeal from the Orphans' Court of *Allegheny county*.

These were appeals by Eliza C. Totten, widow of W. J. Totten, deceased, and L. R. McAboy, guardian of Josephine B. Totten, Sidney H. Totten, Charles K. Totten, and Virginia L. Totten, minor children of deceased, from the decree of the Orphans' Court setting aside the inquisition and all subsequent proceedings relating to the partition of the real estate of said deceased.

The case was this:—L. R. McAboy, as guardian of the minor children of W. J. Totten, presented his petition to the Orphans' Court of Allegheny county on the 28th day of December 1858, praying the court to award a writ of partition. The petition

was in the usual form, containing the names of all the parties
interested, and a description of the real estate of the intestate.
The parties interested in the estate were Eliza C. Totten, the
widow, Robert C. Totten, Caroline A. Totten (intermarried with
William H. Hunt), and William H. Denny Totten, all of full age,
and the minor children above named. The writ was awarded, and
the jury, after notice, accepted by the parties of full age, and
by the guardian of the minors, returned their inquest, reporting
that the property would not divide so as to accommodate all the
parties, and dividing it into four purparts, valued at $5000,
$4000, $1400, and $1800. On the 9th day of April 1859 the
inquisition was confirmed by the court, and a rule granted upon
the heirs and legal representatives to appear, and accept or refuse
the estate at the valuation. Notice of this rule was accepted.
On the 22d of April 1859, no exceptions being filed, the inqui-
sition and valuation was confirmed absolutely. On the same day
the rule on the heirs being returned, Robert C. Totten, eldest
son, by his attorney in fact; Thomas B. McMillan, Caroline A.
Hunt, eldest daughter, and William H. Denny Totten, second
son, by their attorney in fact; L. R. McAboy, Sidney Totten,
third son, Harvey H. Totten, fourth son, Charles K. Totten,
fifth son, and Virginia Totten, fifth daughter of said intestate,
minors, by their guardian, L. R. McAboy, appeared in open
court, and severally declined and refused to take any or either
of the purparts at the valuation. Whereupon Indiana McMillan,
the second daughter, then of full age, Anna E. Totten, third
daughter, and Josephine B. Totten, fourth daughter, minors, in
pursuance of an agreement among themselves, by their guardian,
L. R. McAboy, elected to accept purparts, as follows, to wit:
Indiana, Nos. 2 and 3; Anna Eliza Totten purpart No. 1; and
Josephine B. Totten purpart No. 4; which were confirmed to them
by the court, subject to the payments to the other heirs, to be
secured by recognisance. On the 15th of June 1861, Anna E.,
then the wife of Mr. Marshall, presented her petition to the court,
alleging that the premises in the writ of partition were errone-
ously described, by reason of which, the purpart selected for her
by her former guardian was rendered worthless; that the divi-
sion of the estate was unequal, and that purpart No. 1 was
selected for her by L. R. McAboy, her guardian, in opposition
to her wishes. /That the proceedings were not yet completed—
the jury having failed to make full partition. Upon the presenta-
tion of this petition, the court granted a rule to show cause why
the inquest and all subsequent proceedings should not be set
aside. This rule was served upon the parties interested; L. R.
McAboy, the guardian, filed an answer, setting forth that the
partition and selection had been confirmed; that the parties had
taken possession of the parts allotted to them; purchased lands

adjoining them, and made improvements; and that the alleged error made by the jury in measurement had been caused by a deed of quit claim and release: further alleging that the choice of purpart No. 1 for Mrs. Marshall was with her consent and at her request, she being present in court when it was done.

Upon the hearing the court made the rule absolute, and set aside the inquest, and all subsequent proceedings, upon the ground that R. L. McAboy, being guardian for several minors, could not elect to accept or refuse for all of them, but could only act in that behalf for one. From this ruling these appeals were taken.

*Woods & Penney*, for appellants.

The counsel for the appellees submitted no printed argument.

The opinion of the court was delivered, November 5th 1863, by THOMPSON, J.—We are unable to discover any statutory or common law, or practice of the courts, to convince or persuade us to an agreement in opinion with the learned judge below in these cases. The books are full of cases of a single guardian acting for several wards in all matters relating to their estates, including partition. By the 37th section of the Act of the 29th March 1832, ample provision is made for requiring security from guardians for the *faithful* performance of their duties as such; and the *proviso* to the section saves also to the ward his or her common law remedy, for injury by omission or commission of the guardian. One would think that in addition to the impulse of honour and humanity, to act with impartiality towards all the wards, the guardian was pretty well hedged in by the compulsory provisions of the law if he dared to be unfaithful. We see not a shadow of ground for believing the guardian in this case did not do his duty faithfully, impartially, and to the best of his ability.

Nor can we assent to the right of the court, after so long a period had elapsed, and parties had made improvements, purchased adjoining lands, and adjusted their lines, to set aside the decree confirming the partition made, and the proceedings in partition themselves. If a new partition could be enforced under such circumstances, it is manifest that it would involve a partition of the labour and expenses put upon the purparts by those who took them on the faith of the decree of the Orphans' Court. This would be manifestly unjust: Calhoun *v.* Hays, 8 W. & S. 127.

The decree of the Orphans' Court, setting aside the inquest and partition and all subsequent proceedings, is reversed, and the original decree affirmed.

The costs of these appeals to be paid by the appellees.