CARROLL *vs.* S. & S. H. MIX.

Where a bailee of goods absolutely refuses to deliver them to the owner on demand; or denies his right to them; or assumes to be himself the owner; or interposes an unreasonable objection to delivering them; or exhibits bad faith in regard to the transaction; a conversion of the property may be inferred.

But where the defendant received goods from B. without knowing who was the owner, but having every reason to suppose B. to be the owner, and, on demand being made by a third person claiming to be the owner, did not set up any claim to them, nor dispute the claimant's right, but stated, in substance, that he did not know the claimant was the owner; that the property was left by B., and that he desired the order of his father, or B., before delivering the same; or an opportunity to confer with his father in regard thereto; *Held*, that this was not such a refusal as amounted to a conversion of the goods,

THIS is an appeal by the defendants from a judgment of the county court of Albany county, affirming a judgment of the justices' court of the city of Albany.

*R. W. Peckham, Jr.* for the appellants.

*W. A. Allen,* for the respondent.

*By the Court,* INGALLS, J.   The defendants sold to one Blatner a box of glass.  The plaintiff was doing the carpenter work of a building for Blatner, and discovering that the glass did not fit, it was agreed between Blatner and the plaintiff, that the latter should furnish glass that was suitable and take the glass in question in exchange therefor, and the plaintiff did so provide the glass, and left the box of glass in question in the building.  The defendants, by the direction of Blatner, took back the box of glass to the store and the plaintiff called for and demanded the same of Stephen H. Mix one of the defendants.  The plaintiff states the interview as follows:  "Saw Stephen H. Mix there; said I came after my box of glass; he said what box of glass?  I said, the one belonging to me that was in Blatner's building; said I was informed he had taken it; he said he had taken it away; asked him if he would please give it to me; (said not unless I would get an order from Blatner, or his father); I said I did not want to lose time going after Blatner or your father for an order for my property."

On a cross-examination, the plaintiff further testified, "I left the one in question (box glass) at Blatner's; Mix said if I got an order from Blatner, I might have them; *he said he took them from Blatner's, did not know who they belonged to.*"

Stephen H. Mix testified:  "It (the glass) was taken by direction of Blatner; when the plaintiff came there I did not know he had any thing to do with it; so told him;

Carroll *v.* Mix.

I told him the glass was there by request of Blatner; if he would get an order from Blatner, I was willing to give it to him; I told the plaintiff I did not know any thing about his owning it; he said if *I did not your father does ;* I said if father was there, and said so, I would let him have it; we furnished Blatner the glass in the first place." It is obvious that the defendants acquired possession of the glass in question from Blatner from whose house it was taken by the defendants without any knowledge that the plaintiffs had any claim thereto, and the defendants. had every reason to suppose that Blatner was the owner thereof. When the plaintiff demanded the glass, Mix did not set up any claim to it, nor did he dispute the plaintiffs' right, but merely stated, in substance, that he did not know the plaintiff was the owner; that it was left by Blatner, and that he desired the order of Blatner or his father before delivering the same, or an opportunity to confer with his father in regard thereto. This was certainly a reasonable request, and Mix was not bound to part with the possession of this property acquired by him in the manner aforesaid, without some evidence of the plaintiffs' title, or an opportunity to acquire some information in regard thereto. He had every reason to beleive that Blatner was the owner of the glass; it was originally sold to him, and by his request taken back into the possession of the defendants from Blatner's house, subject to his de-demand. If the defendant Mix had absolutely refused to deliver it to the plaintiff; or had denied his right to it, or had assumed to be the owner of it; or had interposed an unreasonable objection to delivering it; or had exhibited bad faith in regard to the transaction, a conversion of the property might have been inferred. We are clearly of opinion that the plaintiff failed in this particular. In *Monnot v. Ibert,* (33 *Barb.* 24,) Justice EMOTT remarks: "It is true the authorities require that the refusal should be absolute and not evasive. But this means that it should

not be a mere excuse or apology for not complying immediately, as when the demand is made by an agent, and the other party wishes to verify his authority before complying, or of an agent who must consult his principal. *If such excuses are made in good faith, they will not amount to a refusal for which trover will lie. There must be an absolute denial of the plaintiff's right, or the qualifications must be unreasonable, or made in bad faith."* (*See also Holbrook* v. *Wight,* 24 *Wend.* 169.) Cowen, J. at page 177 remarks: "So of any reasonable excuse made in good faith at the time, the goods being evidently kept with a view to deliver them to the true owner. It is then the business of the plaintiff to obviate the objection as far as may be reasonably required." (*See also Tuttle* v. *Gladding,* 2 *E. D. Smith,* 157; 1 *Wait's Law and Practice,* 830.) The case at bar is clearly within the principle established by the authorities cited, and the rule thus adopted is reasonable and just, and the plaintiff should have acted upon it, instead of exhibiting such inexcusable haste in commencing an action against an innocent party.

The judgment of the county court and of the justices' court must be reversed, with costs.

[ALBANY GENERAL TERM, March 2, 1868. *Ingalls, Hogeboom* and *Peckham,* Justices.]

