Sheldon, J.
The bill of lading in this case consigned the property to the shipper, as consignee, to the care of a delivery agent at the port of destination. Had it been consigned to consignee or order, the duty of the carrier would have been to have delivered only to the consignee on production of the bill, or to the assignee holding and producing it duly indorsed (3 Kent Com., 289 ; The Thames, 14 Wall., 98, and cases cited).
But in this case, by common consent, not only the shipper, but all the indorsers or assignees of the bill of lading, constituted Rims their agent to receive and care for the property in the usual and ordinary course of business until his agency was properly revoked. Upon the face of the bill, being only such agent, he had no property in the corn, and could maintain no action against the master or carrier for not delivering, or for negligence (Abb. on Shipp., 411; Grove v. Brien, 8 How. U. S., 429). Ror could he, in any manner, pledge or convey title to the property, and his transfer of the bill of lading to the plaintiffs gave them no rights against the consignee or over the property. The bill itself notified them that he was a mere agent, dealing with the property of others, and that it was beyond the *417 ordinary business of a delivery agent to pledge the property of Ms principal (Duncan v. Jandon, 15 Wall., 165).
By a delivery to the agent, the ship fulfilled its engagement. It was right, in fact and in law, that the master report to Nims as the delivery agent, and. take Ms directions as to unlading, and take the ticket evidencing the discharging of the cargo and deliver it to the delivery agent. The delivery to the defendant was done by the lawful order of the agent, and the issuing of the ticket and its transfer to Nims was but a discharge of the duty of the ship, and afforded evidence to him that the duty was performed, and that the corn was in the elevator, subject to his disposition as completely as it was when on shipboard. Whatever the master did was in the line of his duty and the usual and necessary course of business at the port of destination, and, if so, whatever the defendant did in the receiving was equally justifiable. In this view, then, the ship has fulfilled its engagement, and made delivery according to it without production of the bill of lading issued to the shipper, for it had, without notice of the rights of others, delivered to of(e who was the constituted agent of all to receive and care for the property at the port of destination. •
The fact that appeared extrinsically, the bill of lading, that Nims in fact was the owner or the general owner of the property does not change or affect the rights of the carrier or of the defendant 'as far as above considered. If he dealt with it as owner, as he testifies, then he was entitled at least to receive the corn. That he had it on shipboard or in an elevator to his order made no difference, for it was in law continuously in _ Ms possession and under his control, and subject at all times to the plaintiff’s rights, if asserted. The usual course of the business of which courts will take judicial notice is for the vessel immediately to discharge into *418 an elevator, without delay, and then for the property to be re-transferred td canal boats to be forwarded to the seaboard (Gibson v. Stevens, 8 How. U. S., 384).
The defendant, in receiving it from him, or delivering it to him, either controlling it as agent for all parties, or as owner, and allowed to control as such for all, acted merely as the necessary medium of transfer in the usual course, and according to the usage of the port. Rims had the control and disposition of it the whole time., subject merely to the usual charges of the defendant, and the ticket and receipt were but the evidence of those facts. He had the right to withdraw it from the defendant as he did, by the several orders issued, as all such transfers of actual possession are made, and by so withdrawing it he still held it in his possession subject to the title of the plaintiffs, if they had acquired any by the transfer to them of the bill of lading. As the agent or the owner he had the right to care for the property and to receive it from the defendant, and in doing this he did what any vendor, or mortgagor, or pledger does who is left by the vendee, the mortgagee, or the pledgee, in possession, and as to all others who had any interests therein it was his duty so to do and protect and care for the property. That' he may have subsequently converted it or- tortiously defeated the plaintiff’s interest in it cannot lay the foundation of this claim against the defendant.
What is here in controversy is, whether upon the facts in this case the defendant has incurred any liability by receiving the corn and delivering it to the one from whom it was received. Had the plaintiffs notified it before delivery the case would be different, but a delivery without notice upon such facts could not be a conversion. It is not contended that the defendant, acted tortiously, the only evidence of a conversion being the demand and refusal to deliver to plaintiffs long after the property had passed through defendant’s *419 hands in the usual mode of transhipment at the port. The receipt and delivery by defendant, at the time, not being tortious, then there was no conversion at the time, and the subsequent refusal to deliver, on a day when compliance with the demand was impossible, is not sufficient to sustain this action (Hill v. Covill, 1 Comst., 524; and see also Carroll v. Mix, 51 Barb., 212).
It seems plain that the defendant incurred no liability upon the facts in this case. It was in possession of certain necessary facilities for the transfer of grain at the port of Buffalo from ships to canal boats, and it was its business so to do for all who sought to use their facilities. It receives a cargo of corn one day from the one who has control of it, and on the next day delivers it to the samé person upon payment of the charges, and this, too, in the ordinary course of business, and as a necessary and usual part of the machinery whereby the inland commerce of the country is accommodated and transacted. The title or the evidences of title to the property are not considered in the transaction. It is sufficient that the property is restored to the one of whom it is received, or to his order.
The transaction is a mere transhipment, imposing no duty upon the defendant except the ordinary duty of a bailee to restore the property safely to the bailor when no intervening rights of others have been asserted. (Story on Bail., § 450, 582 ; 7 Bing., 339). If any other rule is to be applied to the transfer of cargoes at the port of Buffalo it would manifestly embarrass if not prevent the ordinary transaction of commercial business.
Upon these considerations the defendant is not guilty of the alleged conversion, and I have desired so to determine this case that the judgment may be applicable to the similarly daily recurring instances of the receipt *420 and transfer of cargoes at commercial centers in the ordinary and well-established course of business.
The case, however, presents other facts which prevent a recovery by the plaintiffs.
It-certainly appears that Nims acted not only as delivery agent and as owner in controlling the property, and this, too, for the benefit of all concerned, but the plaintiffs expressly allowed and expected him so to do and to ship the property after it had passed through the' hands of the defendant. He informed them after the cargo arrived that he should mix it as he-did and ship it, which meant to ship it,forward by boats to the well-known and usual market. The plaintiffs are chargeable with notice that in order to accomplish this it was necessary to pass the corn through an elevator and thence to discharge it into boats, upon which it then became shipped forward to -the seaboard. This was done by Nims, as was permitted and expected. It' would seem that'the plaintiffs relied upon his integrity in the whole matter, unreservedly entrusting him with the duty and business of shipping and disposing of the property, and had he repaid their advances and charges as expected, no claim against any one would be asserted or pretended. This appears to be manifest from the facts that they gave no notice of their rights to the master or the defendant, and took, no steps to assert them until November 30, when Nims failed and the property was in the hands of purchasers who, upon the above facts, having bought it of one expressly authorized to ship and sell, would hold it against the plaintiffs. Whatever derelictions of duty may be charged to the plaintiffs’ agent in this matter, the defendant is innocent upon the principles above stated, and still more clearly so upon the facts of the whole transaction between the plaintiffs and their agent.
The complaint is dismissed, with costs.