FIRST NATIONAL BANK OF FARGO *vs.* MINNEAPOLIS & NORTHERN
ELEVATOR COMPANY.

**Conversion by Chattel Mortgage—Defenses—Payment—Authority of Agent.**

In an action wherein a mortgagee seeks to recover damages for
an alleged conversion of a quantity of wheat delivered to the de-
fendant by the mortgagor, and in which the defense interposed is
that the defendant paid for the wheat in controversy by paying
certain debts due from the mortgagor to farm laborers, which
payments it claims were made under the alleged authority of a
person who, during three years just prior to the year in which the
wheat was delivered, concededly was the mortgagee's agent, it is
*held* that the trial court did not err in instructing the jury: (1) That
any custom of paying labor claims existing between the parties in
prior years would not justify the payments now relied upon; or
(2) that the defendant must rest its defense of payment upon au-
thority derived from plaintiff's alleged agent; or (3) in instructing
the jury that there is no proof that such person was an actual agent
during the year in question. (4) It is also held that the question
of the ostensible authority of said alleged agent was fairly sub-
mitted to the jury under the instructions given, and that the court
did not err in refusing defendant's requests referred to in the
opinion; also (5) that the court did not err in refusing to instruct
the jury that the grain, if converted at all, was converted when ship-
ped out of defendant's elevator; nor, on the facts of this case, did
the court err in instructing the jury as to the date when the con-
version occurred.

**Instructions.**

In cases where the cautionary instruction, "Falsus in uno, falsus
in omnibus," is proper, and is given, it is essential that the jury be
instructed that the false testimony which will authorize them to
discredit the testimony of a witness must be as to material facts,
but it is not absolutely necessary that the word "material" shall be
used in the instruction; and, when words plainly conveying the same
meaning are used, the instruction will not be held erroneous.
*Held*, that the instruction set out in the opinion, which omits the
word "material," by other language sufficiently informed the jury
that the false testimony must be as to material facts.

**Depositions.**

Under section 5682, Rev. Codes, a party to an action may read
in evidence a deposition taken by his adversary, but his right to
introduce the deposition does not extend to introducing mere ex-
cerpts or isolated parts thereof at his option. Upon objection, the
court may, in its discretion, require all of the depositions to be read,
or it may permit parts thereof relating to distinct transactions to
be read; but in doing so the party should be required to read all
of the evidence which relates to such transactions.

Appeal from District Court, Cass County; *Pollock, J.*
Action by the First National Bank of Fargo against the Minneap-

olis & Northern Elevator Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Ball, Watson & Maclay,* for appellant.

The acts of a former general agent within the scope of his original authority will, notwithstanding it revocation, continue to bind the principal to those parties who have been and still are dealing with him in good faith in reliance upon his former authority until they have had notice of its revocation. Mechem on Ag'cy, 224; Story on Ag'cy, 470; *Claflin* v. *Lenheim,* 66 N. Y. 301; *McNeilly* v. *Ins. Co.,* 66 N. Y. 23; *Packer* v. *Henckley,* 122 Mass. 484; *Diversy* v. *Kellogg,* 44 Ill. 114; *Lamothe* v. *Ry. Co.,* 17 Mo. 204; *Ins. Co.* v. *McCain,* 96 U. S. 84. Defendant's request for instruction to the effect that the plaintiff bank owed to defendant the duty of notifying it that Eddy was no longer the bank's agent, if that was a fact, should have been given. *Cooper* v. *Schwartz,* 40 Wis. 54. After two trials and an appeal upon the theory that the plaintiff had no interest whatever in the Buckland wheat and the plaintiff's repeated admissions in open court to the same effect, it was an error in the court to submit to the jury the question whether the plaintiff was entitled to a portion of that wheat. Plaintiff was bound by its admissions made in open court. *Bingham* v. *Board,* 6 Minn. 136; *Leonard* v. *White,* 5 Allen, 177; *Ry.* v. *Shoup,* 28 Kan. 394; *Bank* v. *Sprigg,* 11 Md. 389. The court erred in charging that the proof against the existence of an actual agency was overwhelming. 11 Enc. Pl. & Pr. 97; 2 Thompson on Trials, 2287. The court erred in excluding the testimony of W. E. Ditmer, taken in deposition by plaintiff in 1897.

*Newman, Spalding & Stambaugh,* for respondent.

The court did not err in refusing plaintiff's counsel the right to read a portion of the deposition of W. E. Ditmer. Counsel announced that he intended to read only portions of the deposition and proceeded to read separate and detached questions, which he had no right to do. § 5682, Rev. Codes; *Scott* v. *Indianapolis Wagon Works,* 48 Ind. 82; *Grant* v. *Penderry,* 15 Kan. 184; *Bank* v. *Rhulasal,* 67 Ia. 316. It is in the discretion of the court whether it will permit a portion of the deposition to be read without requiring a reading of the whole. *Southwark Ins. Co.* v. *Knight,* 6 Horton, 327; *Bank* v. *McSpedon,* 15 Wis. 699; *Kilbourne* v. *Jennings,* 40 Ia. 473; *Prewitt* v. *Martin,* 59 Mo. 325; *Norris* v. *Brunswick,* 73 Mo. 256.

YOUNG, J. The plaintiff seeks to recover damages for the alleged conversion of a quantity of wheat grown by one W. E. Ditmer, in the year 1896, upon certain lands situated in Cass county, and delivered by him in the fall of that year to the defendant at its elevator in Argusville in said county, and upon which it is conceded that plaintiff had a chattel mortgage executed by said Ditmer. The jury returned a verdict for plaintiff for $581.46, and in respnose to the following special question submitted to them by the court: "For

how many bushels do you find the plaintiff entitled to recover?"—they answered, "602." The sum awarded in the general verdict, as above stated, was for 602 bushels at 78½ cents per bushel, with interest from the 14th day of August, 1897, the alleged date of the conversion. A motion for new trial was made by defendant upon a statement of the case containing specifications of a number of alleged errors of law which were urged in support of the motion. The motion was denied. Defendant has appealed from the order overruling the same. The errors assigned in appellant's brief, and urged in this court, as grounds for reversing the order appealed from, relate entirely to rulings upon evidence and to the instructions. There is no controversy as to the fact that the wheat in question was delivered by Ditmer to the defendant, and that the plaintiff has an unsatisfied mortgage thereon, duly executed by Ditmer, and of record, as alleged, or as to the fact that, prior to the commencement of this action, plaintiff made demand for the wheat, which demand was not complied with. None of the foregoing facts are challenged by the defendant. On the contrary, it admits that it received the wheat from Ditmer, the mortgagor, and that the same was demanded by the mortgagee, the plaintiff herein, and that it refused, and still refuses, to deliver the same. Defendant denies, however, that it converted the grain in question and, as a complete defense, alleges that it bought and paid for the same in the regular course of business; that payment for said grain was made to certain farm laborers who worked for Ditmer, in 1896, in producing the crop for that year; and that such payments were made under the authority and by the direction of one E. C. Eddy, plaintiff's alleged agent. The defendant further claims that, even if there was a conversion of the grain, which it denies, it did not occur on August 14, 1897, the date at which the jury fixed its value, but that it occurred in the fall of 1896, when the grain was delivered to the defendant and by it shipped out of its elevator, at which time the price of wheat was considerably lower than in the following August.

The facts essential to an understanding of the questions to be considered may be stated as follows: In 1896, Ditmer was indebted to the plaintiff in a considerable sum; a large portion of his indebtedness had existed throughout the years 1893, 1894, and 1895; Ditmer was also indebted to E. C. Eddy during the same period; prior to 1895, Ditmer had given separate crop mortgages to secure his indebtedness to Eddy, and to the plaintiff bank; in 1895 the debts were, in form, consolidated, and the renewal notes and mortgage executed for that year ran to the bank. Eddy was employed by the plaintiff as its agent in the years 1893 and 1894, and had full authority as to directing the sale of the Ditmer grain and the disposition of the proceeds of the same. In 1895 the plaintiff bank entered into a written contract with Eddy, under which he was to give the matter of the disposition of the crops raised by Ditmer under the mortgages executed for that year his personal attention; and he

did so. In April, 1896, Eddy conveyed his interest in the Ditmer debt to the bank. His authority to represent the bank was then revoked, and he was thereafter without actual authority to act for the bank in the Ditmer matters in any way whatever. Evidence was introduced by defendant to the effect that in the years 1893, 1894, and 1895, Eddy authorized the defendant's agent at Argusville, one Will Freeman to pay labor claims such as were paid in 1896; and the testimony of said agent is to the effect that he had no knowledge or notice that Eddy's authority was revoked in 1896, and that the payment of the labor claims in said year—and that is the defense interposed in this action—was made under Eddy's direction. The testimony of Eddy is to the effect that he expressly informed Freeman that he had no authority in reference to the crop of 1896, and, further, that he gave no directions as to the disposition of the same, and there is other evidence in the record that Freeman had notice of the revocation of Eddy's agency.

A number of errors assigned on the instructions are so related that they may be conveniently considered together. The following portions of the court's charge are assigned as error: (1) "The defendant does not claim that the farm laborers had a lien upon the 602 bushels, but must rest its defense upon the alleged fact that it was authorized by the agent of the plaintiff bank to thus dispose of such property." (2) "Any previous custom of paying farm laborers, existing between the parties, would not warrant the defendant paying such claims in 1896." (3) "There is no proof in this case of what is known as 'actual agency.' In other words, the proof is overwhelming that Mr. Eddy was not employed by the bank to take charge of this crop as an actual agent." It is also urged that error was committed in refusing the following instructions requested by the defendant: (a) "I charge you that if you are satisfied, from the evidence, that it had been the custom of the elevator company during the years 1893, 1894, and 1895, to pay labor claims and other expenses due upon the Ditmer lands, and that the bank had knowledge of the making of such payments and acquiesced in them, you would be authorized in finding that the elevator company was justified in paying the four labor claims in question in this case." (b) "In deciding whether or not the bank used ordinary care under the meaning of the law as I have given it to you, I instruct you that you are entitled to consider what the conduct of an ordinarily careful and prudent person would have been under the same circumstances, and if you find that an ordinarily careful and prudent person occupying the position that the bank occupied, under the circumstances of this case, would have notified Mr. Freeman or the elevator company that Mr. Eddy was no longer its agent, then you are authorized to find that the bank did not use ordinary care."

It is perhaps unnecessary to state that the charge given must be considered as an entirety, and that it is to have a reasonable interpretation when considered in the same connected way in which it

was given. "If, when so construed, it presents the law fairly and correctly to the jury, in a manner not caluculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous, or because there may be an apparent conflict between isolated sentences, or because its parts may be in some respects slightly repugnant to one another, or because some of them taken abstractly, may have been erroneous." 2 Thomp. Trials, § 2407, and cases cited. In our opinion, the trial court did not err in giving the instructions complained of. Neither did it err is refusing the instructions requested by the defendant. The instruction that there is no proof in the case of actual agency on the part of Eddy, as to the crop of 1896, was proper, and is fully warranted by the evidence. "Agency is actual when the agent is really employed by the principal." § 4307, Rev. Codes. Eddy testified that his prior agency was revoked early in the spring of 1896, and expressly denies having been employed in reference to the 1896 crop in any way whatever. The officers of the bank are equally explicit in their testimony, and there is no evidence to the contrary. It is patent that there was no actual agency on the part of Eddy in 1896, and that, if any agency existed whereby Eddy could bind the bank, it was ostensible only. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent, who is not really employed by him." Section 4308, Rev. Codes. The jury was fully instructed on the subject of Eddy's alleged ostensible agency. The meaning of the terms "ostensible agency," "ostensible authority," and "ordinary care," was carefully defined, and the jury was instructed generally that it must pass on the question of agency, and determine whether, under all the facts and circumstances of the case, Eddy was the ostensible agent of the bank in the transactions with reference to the wheat in question. And to this was added a more explicit instruction in the following language: "The defendant insists that Mr. Eddy was the ostensible agent of the bank, growing out of the acts of the bank in dealing with the defendant concerning the same. It has been shown in evidence that, for two or three years prior to that of 1896, Mr. Eddy was the agent of the bank in dealing with the Ditmer crops. And defendant claims that, by want of ordinary care, the plaintiff allowed the defendant to deal with Eddy in 1896, and permitted it to believe that Mr. Eddy was such agent, when, as a matter of fact, he was not; that the bank never, to the knowledge of the elevator company, interrupted the old arrangements existing between it and Mr. Eddy; that it never notified the defendant's agent, Mr. Freeman, of any change in Eddy's relations to it or to the wheat in question. All these questions are proper for you to consider as the same shall be disclosed by the evidence." The foregoing instruction sufficiently covered the defendant's second request, and we think fairly submitted to the jury for determination the question of Eddy's alleged agency.

Neither, in our opinion, did the court err in instructing the jury that the defendant must rest its defense of payment upon authority derived from plaintiff or its agent, or in refusing the defendant's first request, which was to the effect that, if the jury found that a prior custom had prevailed between the parties to pay labor claims, it would justify the payment of the four labor claims upon which the defendant now relies. There was no evidence before the jury to which an instruction as to the legal effect of custom or usage was applicable. A custom or usage which is merely local must be proved as any other fact. Courts will not take judicial notice of it, nor can its existence be left, without proof by witnesses, to the private information of jurors. "The usage must be positively established as a fact, and not left to be drawn as matter of inference from individual transactions." 27 Am. & Eng. Enc. Law, 732-738, and cases cited; *Bodfish* v. *Fox*, 23 Me. 90, 39 Am. Dec. 611. The usage or custom which will bind parties affected thereby is defined by § 5128, Rev. Codes, as follows: "Usage is a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties or so well established, general and uniform that they must be presumed to have acted with reference thereto." If it were conceded that a usage or custom could exist, as to the payment of labor claims by parties operating elevators, which would bind persons having an interest in grain deposited therein, nevertheless it would not avail the defendant in this case. The record contains no evidence, and none was offered at the trial, to show that any such usage or custom prevailed at Argusville or elsewhere. There is an entire absence of evidence as to the existence of a local usage or custom such as is defined by the statute above quoted. Neither is there any evidence that the payments upon which the defendant now relies, or any prior payments, were made by its agent in reliance upon a local usage or custom. On the contrary, it appears that all of the payments made in 1893, 1894, and 1895 were made under the authority and direction of E. C. Eddy, who, during such period, was clothed with full authority to direct such payments. If, in fact, Freeman paid labor claims in some instances in prior years without express directions, and his acts were ratified by Eddy or by the bank, this fact in itself would not authorize him to pay such claims in the future, at his own volition and without direction. Payments so made, not having been authorized, would not bind the plaintiff unless ratified. It is therefore evident that the payments made by the defendant in 1896, and upon which it now relies, must have been made under the authority of the plaintiff bank in order to constitute a defense. It is not important whether Eddy's alleged agency during the year 1896, when the payments in question were made, was actual or ostensible. The effect of his acts would be the same in either event, and would bind the defendant. This question was left to the

jury, and was resolved against his alleged ostensible agency. Under the instructions last above quoted, the jury was authorized, for the purpose of determining whether Eddy was an ostensible agent, to consider the evidence as to his relation to the Ditmer matters in former years, and also the evidence as to Freeman's knowledge or ignorance of the revocation of Eddy's authority. By these instructions, the jury was authorized to give the evidence referred to its full legal effect, and the same was, in our opinion, favorable to the defendant.

The court also refused the following request: "If the elevator company converted the wheat in question at all, such conversion took place at the time the wheat was shipped out of the elevator, and for such wheat so converted your verdict should be in favor of the plaintiff for the market value of the wheat at the time it was shipped out, with interest from that date at the rate of seven per cent. per annum;" and instructed the jury, on this subject, that "the conversion of the wheat, if you find that there was such conversion, took place on the 14th day of August, 1897." Evidence of the market value of wheat in Argusville on August 14, 1897, was admitted over defendant's objection. The giving and refusal of the foregoing instructions and the admission of the testimony referred to are assigned as errors. The assignments cannot be sustained. The facts which fix the date of the alleged conversion are not in dispute. The wheat in question was deposited in the defendant's elevator in the months of October and November, 1896. It was placed there by the owner, and the defendant was therefore in lawful possession. The plaintiff, by virtue of its mortgage, was entitled to possession upon demand. A demand followed by a refusal would constitute a conversion. No demand was made until February 12, 1897, when plaintiff's attorneys wrote to defendant's general manager at Minneapolis, Minn., demanding the grain in controversy, and requesting a reply as to whether or not it would be delivered. This letter was not answered. On February 24, 1897, a second letter was written, similar in substance to the first; to this letter the general manager replied, acknowledging the receipt of both letters, stating that he had forwarded the same to C. F. Sims, the defendant's general superintendent at Grand Forks, with the request that the matter be investigated by him. He also requested the plaintiff's attorneys to conduct their further correspondence with reference to the matter with said Sims. On March 2, 1897, plaintiff's attorneys wrote to said superintendent, referring to their former correspondence with the general manager, repeating the demand for the grain in controversy, and requesting an answer at the earliest practicable moment whether the demand would be complied with. This letter, if received at all by the superintendent, was not answered. Nothing further was done until August 13, 1897, when plaintiff's counsel again wrote the general superintendent, calling his attention to the several prior communications, and making demand for a delivery of the grain. This letter was sent by regis-

tered mail. On the 14th day of August, plaintiff's attorneys received a registry receipt therefor, signed by the superintendent. This letter was not answered, and on August 18, 1897, this action was commenced. On this state of facts we are entirely clear that the instruction given was proper, and that the trial court properly refused to instruct the jury that the conversion occurred in the fall of 1896, when the defendant shipped the wheat out of its elevator. As previously stated, the defendant was rightfully in possession of the grain. Its obligations were fixed by the statute, and the fact that it may have mixed the grain with other grain, or that it may have shipped it out, if such was the fact, did not constitute a conversion. Under the law it could fully comply with its obligations to the owner or person entitled to possession by delivering to such person an equal quantity of wheat of like grade; and only upon a demand by the person entitled to possession, and a refusal on its part, would it be liable for a conversion. § § 1790-1792, Rev. Codes; *Best* v. *Muir,* 8 N. D. 44, 77 N. W. Rep. 95, 73 Am. St. Rep. 742; *Marshall* v. *Andrews,* 8 N. D. 364, 79 N. W. Rep. 851; *Towne* v. *Elevator Co.,* 8 N. D. 200, 77 N. W. Rep. 608. See, also, *Sanford* v. *Elevator Co.,* 2 N. D. 6, 48 N. W. Rep. 434. Neither can the defendant be heard to say that the conversion occurred when the earlier letters were written. True, each letter contained a demand, but each letter called for a reply. The defendant neither complied with nor expressly refused any of the several demands. The reply of the general manager indicated that the matter was being investigated. The defendant, being in rightful possession of the grain, had a right to a reasonable time in which to investigate the plaintiff's claim before it could be compelled to surrender the grain or refuse to do so. *Manufacturing Co.* v. *King,* 14 R. I. 511; *Dowd* v. *Wadsworth,* 13 N. C. 130, 18 Am. Dec. 567; *Carroll* v. *Mix,* 51 Barb. 212.

The following instruction is also assigned as error: "If any of the witnesses are shown knowingly to have testified falsely on this trial, touching matters here involved, the jury are at liberty to reject the whole of their testimony, unless the same is corroborated by other credible evidence in the case." The criticism of this instruction is that it does not state that the false testimony must be as to a material fact. It is undoubtedly true that in giving a cautionary instruction as to the maxim, "Falsus in uno, falsus in omnibus," it is essential that the jury be informed that the false testimony which will authorize them to discredit the testimony of a witness must be as to facts that are material in the case. The reason of the rule is that "no liability for the legal punishment of perjury results from willful false swearing to an immaterial fact. The full obligation of the compulsory power of a judicial oath does not bear in such case upon the witness." *Peak* v. *People,* 76 Ill. 289. The authorities are uniform, we believe, in holding that, in cases where this cautionary instruction is proper, the jury should be informed that the false testimony must be as to a material fact. *Moresi* v. *Swift,* 15

Nev. 216; *Pierce* v. *State,* 53 Ga. 365 ; *Fishel* v. *Lockard,* 52 Ga. 632 ; *Hall* v. *Renfro,* 3 Metc. (Ky.) 52. But we do not understand that it is necessary to expressly use the word "material," or that a failure to use that particular word makes the instruction . erroneous if the same meaning is conveyed by other equivalent expressions. So far as we are able to learn, other expressions of equivalent meaning have been held sufficient. In *People* v. *Ah Sing,* 95 Cal. 657, 30 Pac. Rep. 797, the following instruction was held sufficient: "If you believe that any witness has sworn falsely as to any fact in the case, then you are at liberty to entirely discredit the testimony of such witness." The court said that, "even if appellant's contention be true that the false evidence must be as to material matters, then the instruction still comes within such rule, for it refers to 'any fact' in the case." So, also, in *Hart* v. *Hopson,* 52 Mo. App. 177, an instruction that if the jury believed that any witness had sworn falsely as to any of the facts mentioned in the other instructions, as bearing upon the claim sued on, or the defense thereto, they were at liberty to discredit entirely the testimony of such witness, was held to sufficiently instruct the jury that they were authorized to discredit only witnesses who had willfully sworn falsely to material facts. In the present case the jury was instructed that they might discredit witnesses who are shown knowingly to have testified falsely on the trial "touching matters here involved." The court elsewhere in the charge fairly stated the matters which were involved. The direction that the false testimony must be "touching matters here involved" was .equivalent to stating that it must be as to material matters, for, as a matter of course, only material matters were involved.

Error is also assigned on the court's ruling denying the defendant the privilege of introducing certain questions and answers which were contained in the deposition of W. E. Ditmer, which had been taken on behalf of the plaintiff and used on a former trial. The record shows that counsel for defendant announced that he intended to read but a portion of the deposition. Counsel for plaintiff objected unless the entire deposition was offered. The abstract shows the following ruling: "The court permits counsel to read from such deposition such parts thereof as are relevant, and relate to any distinct transaction or transactions connected with the subject-matter under controversy in this action, and requires him to read all of the evidence pertaining to such transaction; leaving it to the discretion of the other party to offer the remainder of the deposition if he so desires." In this ruling we find no error. It is true, the defendant was authorized under the statute to read the deposition in evidence. § 5682, Rev. Codes. But its statutory right did not extend to reading mere excerpts and isolated parts thereof. It is well settled that it is within the discretion of the trial judge to require an entire deposition to be read. The authorities uniformly hold, we believe, that, when a portion of a deposition is permitted to be read relating to a separate transaction, all the evidence that is competent and pertinent to

the subject must be introduced. A part of the deposition cannot be read, and a part omitted, at the option of the party offering it. All that is competent and pertinent to the transaction should be read, or none. *Kilbourne* v. *Jennings,* 40 Iowa, 473; *Bank* v. *Rhutasel,* 67 Iowa, 316, 25 N. W. Rep. 261; *Prewitt* v. *Martin,* 59 Mo. 325; *Bank* v. *McSpedon,* 15 Wis. 628; *Schwartz* v. *Brunswick,* 73 Mo. 256; *Grant* v. *Penderry,* 15 Kan. 236; *Lanahan* v. *Lawton,* 50 N. J. Eq. 276, 23 Atl. Rep. 476; *Scott* v. *Wagon Works,* 48 Ind. 75; 6 Enc. Pl. & Prac. 586, and cases cited. The order made by the trial court was strictly within the above rule, and deprived the defendant of no right to which it was entitled.

Finding no error in the order denying the motion for a new trial, it will be affirmed. All concur.