**Willard PETERSON, Appellant,**

v.

**Elizabeth McCARNEY, Elvern Lund, Robert P. McCarney, and Jerry Spaedy, Appellees.**

**Civ. No. 9289.**

Supreme Court of North Dakota.

June 2, 1977.

Pearce, Anderson, Thames & Durick, Bismarck, for appellant; argued by B. Timothy Durick, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for appellees; argued by A. William Lucas, Bismarck.

SAND, Justice.

Peterson, the plaintiff, appealed from a judgment in his favor against Elizabeth McCarney, defendant-appellee, issued by the district court, Burke County, fifth judicial district.

Originally, in 1957 Peterson entered into an oral lease with Huttner, the father of Mrs. McCarney, and farmed his land on a crop share basis. Elizabeth McCarney, appellee (hereinafter McCarney), acquired title to this land in 1967. She continued the oral lease with Peterson to farm the land on a one-half crop share basis. In accordance with the oral lease, McCarney paid one-half of the expenses for combining, grain hauling, spraying, and fertilizing, and all of the expenses for seed. Peterson customarily informed McCarney on or about 1 December as to the crop grown, grain sold, and expenses incurred for the crop year.

This arrangement continued until the latter part of 1973 when McCarney requested an accounting from Peterson as to the number of acres seeded, yield, etc. McCarney, at about the same time, also caused a check to be made in the elevators in the community regarding the sale of grain, and also caused the grain bins to be padlocked. After several contacts and exchanges by letter, telephone, etc., between the parties (McCarney, through her agents) Mr. Peterson was advised in writing by McCarney's attorney, in a letter dated 17 April 1974, in response to Peterson's letter dated 9 April 1974, not to assume anything regarding renewal of the lease. This was followed by a letter dated 29 April 1974 notifying Peterson that he was not to farm the McCarney land during the 1974 crop season. Thereafter Peterson instituted legal action seeking a restraining order against McCarney for quiet possession and the right to farm the land in question, or, in the alternative, damages.

The trial court, after a hearing, denied the request for the restraining order but ordered judgment against McCarney for conversion of grain, crop expenses, and for the amount expended in pursuit of the converted grain, plus costs.[1]

Peterson's principal contention is that McCarney was required by law to give him written notice of her intention not to renew the oral lease and the trial court erred by not concluding such notice was necessary under the circumstances of the case and for not allowing damages for lost profits for the crop year 1974 allegedly caused by nonrenewal of the lease.

■ Peterson's counsel, during oral argument, in addition to the principal argument, urged that the case be remanded to the district court for additional findings of fact. However, he made no motion prior to the appeal pursuant to Rule 52(b), North Dakota Rules of Civil Procedure, for amended or other findings of fact. We must assume he considered the findings of fact adequate when he decided to appeal rather than attempt to have them enlarged. Under these circumstances we do not believe the question should be considered in the posture of this appeal.

Peterson otherwise has not challenged the trial court's findings of fact.

The pertinent findings are as follows:

"III.

"That the defendant, Elizabeth McCarney, and the plaintiff, Willard Peterson, did entered [sic] an oral lease arrangement in the year 1967 wherein the plaintiff was to farm the property as a tenant of the defendant, Elizabeth McCarney, and have possession of the crop land in

---

1. The complaint also was against Elvern Lund, Robert P. McCarney, and Jerry Spaedy but was dismissed with prejudice and with costs as taxed and allowed by the clerk of court. The judgment also included damages from McCarney's causing a padlock to be put on the grain bin in which the previous year's crop was stored. It covered the damages sustained by

Peterson for conversion as well as McCarney's share of the costs for seed, harvesting, and other incidentals relating to the crop year pursuant to the oral agreement. These items are not a part of the appeal, which is limited primarily to the renewal question or the giving of notice before termination of the oral lease.

the approximate amount of 376 acres for the purpose of farming the same.

"IV.

"That the terms of the lease arrangement between the above parties was that the plaintiff would farm said property on a crop-share basis wherein Elizabeth McCarney would receive one-half of the crops grown on said land as rent. Additionally, the lease arrangement called for Elizabeth McCarney to pay for one-half of the combining expenses, spraying expenses, grain hauling expenses, fertilizer expenses and that Elizabeth McCarney was to pay for, or provide, all of the seed used on said land.

"V.

"That the above referred to lease arrangement began some time in April, 1967, and continued through the crop year 1973.

"VI.

"It was the practice of the above parties that shortly after December 1 of each year, the plaintiff would inform the defendant, Elizabeth McCarney, as to the crop and send her a check for her share of the grain sold and the plaintiff would, at that time, submit a statement to defendant Elizabeth McCarney as to the expenses for the prior year.

"VIII.

"Some time in November or December of 1973 the defendant Elizabeth McCarney requested from the plaintiff information regarding the number of bushels raised, the number of acres seeded, the type of grain seeded for the six years prior to the request regarding the above described property.

"IX.

"In late December, 1973, the defendant, Elizabeth McCarney, had the grain bins located on the above described property padlocked, said bins containing grain which plaintiff had raised on the farm but had not divided between himself and defendant Elizabeth McCarney. In the first week of January, 1974, plaintiff discovered that the bins had been padlocked and requested a key from the defendant,

Elizabeth McCarney and defendant Elvern Lund. Peterson requested a key for the grain bins but was refused until such time as the above accounting request was complied with. Plaintiff's one-half share in the above described grain was approximately 2,406.5 bushels.

"XI.

"Peterson made one trip from Fargo to Bismarck and stayed over night, in order to determine the reason for the padlock on the grain bins above referred to.

"XIII.

"There is no evidence that Mrs. McCarney or her agents consented to a renewal of the oral lease between the parties.

"XIV.

"That by letter dated April 29, 1974, the defendant, Elizabeth McCarney, did notify the plaintiff that he was not to farm the above described property for the year 1974. Defendant, Elizabeth McCarney did orally tell Mr. Petersen [*sic*] some time in November, 1973 that she was thinking of renting the farm land to someone else."

"CONCLUSIONS OF LAW

"I.

"That the above arrangement between the plaintiff and defendant Elizabeth McCarney established the relationship of landlord-tenant and that the lease arrangement was based upon a calendar year.

"II.

"There is no evidence that the landlord or her agents consented to a renewal of the oral lease for another year; to wit 1974."

Both conclusions of law Nos. I and II may be considered a mixed question of law and fact. In *Jahner v. Jacob,* 233 N.W.2d 791 (N.D.1975), we said:

"Findings of fact are recognized as such even though they may be denominated by their placement as conclusions of law."

The oral lease under consideration involved only the cropland. It did not apply to buildings on the land or the right to

graze cattle on the land or to cut hay for his personal use. The buildings and the other property on the land were leased to a Mr. Lund.

Peterson, during the crop year, lived on his own farm near the McCarney land but during the winter he lived in Fargo, from where he returned generally in the middle of April to start the farming operation.

Peterson's brief states that he has no quarrel with the court's findings that the lease expired automatically but disagrees with McCarney's position that the expiration of the leasehold interest on December 31 also relieves the landlord of giving notice to the tenant of his intention to terminate the landlord-tenant relationship.

Peterson predicates his contention in part upon § 47–17–01, North Dakota Century Code, which provides that:

"A tenancy or other estate at will, however created, may be terminated by the landlord's giving notice to the tenant in the manner prescribed by section 47–17–02 to remove from the premises within a period specified in the notice of not less than one month."

An examination of the history of Chapter 47–17, NDCC, discloses that it was first adopted as Chapter 2 of Title 2, Part 2 of the Civil Code of 1877 with the title "Termination of Estates." In 1943 the Code Commission, without explanation, changed the title to "Termination of Estates at Will," and in the Century Code it is again entitled "Termination of Estates." Chapter titles are entitled to consideration in the construction of a code section included thereunder if the section is ambiguous or otherwise unclear. See, *Udgaard v. Schindler*, 75 N.D. 625, 31 N.W.2d 776, 780 (1948).

In *Lincoln National Life Insurance Co. v. Sampson*, 61 N.D. 611, 239 N.W. 245 (1931), this court said:

"A tenant under a lease who holds over after the term is ended, against the consent of the lessor, and refuses to surrender possession, is not a tenant at will. [Citations omitted.] One cannot be a tenant at will without permission of his landlord expressed or implied. In this case there is no expressed or implied permission of the landlord for the tenant to remain. The facts are to the contrary."

In the instant case, the trial court found as follows:

"There is no evidence that Mrs. McCarney or her agents consented to a renewal of the oral lease between the parties."

In addition, the trial court in its memorandum opinion, stated:

"In November 1973 Peterson was told by Mrs. McCarney that she was considering renting the land to someone else."

Also, with reference to a letter written by Peterson to Mrs. McCarney on April 9, in which he stated "I am getting ready for spring work and must assume from previous conversation with you that I am still to farm your lands but a meeting is necessary beforehand," the court observed in its memorandum opinion:

"It appears to me that Peterson was doing a little fishing when he wrote that letter. There was no conversation with Mrs. McCarney that would cause him to believe he had the land for another year."

■ The evidence and the findings by the trial court clearly illustrate that Peterson had no expressed nor implied permission to continue as a tenant of the farm land. We further observe that Peterson was not in possession of the land as is normally understood in that he did not reside on the farm land, but, rather, resided on his own farm nearby for the farm season and resided in the city of Fargo in the winter months. These facts cannot establish a tenancy at will. Consequently, § 47–17–01, NDCC, has no application to the instant case.

The Court, in the case of *Foster v. National Tea Company*, 74 N.D. 37, 19 N.W.2d 760 (1945), said:

"During the pendency of the negotiations for a new lease, lessor's consent to the occupation of the premises by the lessee was not an unqualified one and during such time the lessee was no more than a

tenant at will. *Grant v. White*, 42 Mo. 285."

This statement does not support a conclusion that the lessee was converted into a tenant at will. The statement is merely that the tenant did not have a greater right than a tenant at will but it does not establish that he is, in fact, a tenant at will which requires the giving of certain notices.

■ In *Wilson v. Divide County*, 76 N.W.2d 896 (N.D.1956), the Court said:

"A lease is terminated by the expiration of the term of the tenancy as fixed by the lease without any notice unless required by statute.",

then made reference to 51C C.J.S. Landlord and Tenant, § 89. The Court continued by saying:

"The statute above cited [§ 47–1614 NDRC 1943] provides that the leasing of real property terminates at the end of the term agreed upon. No notice is required."

51C C.J.S. Landlord and Tenant, § 89, page 279, now provides as follows:

"Generally, a lease for a year or for a definite period is terminated by the expiration of the term of the tenancy as fixed by the lease. Such termination may occur without any notice, except where a notice is required by statute or because of the particular terms of the lease, as discussed infra § 89(3)."

51C C.J.S. Landlord and Tenant, § 89(3), provides, in part, as follows:

"In the absence of a statute or provision in the lease to the contrary, no notice of termination or notice to quit need be given by the lessor in order to terminate a lease for a term of years, or other definite period, nor need any notice of termination or of intention to quit be given by the lessee. So where a tenant holds over after expiration of a renewed term the landlord is not required to give notice of intention to terminate the tenancy. Also, where the expiration of the lease depends on the happening of a collateral event, no notice to quit is necessary on the happening of such event."

As an example of the statute requiring notice, Iowa has provided for such in § 562.-6:

"Where an agreement is made fixing the time of the termination of the tenancy, whether in writing or not, it shall cease at the time agreed upon, without notice. In the case of farm tenants, except mere croppers, occupying and cultivating an acreage of forty acres or more, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice of termination is given by either party to the other, whereupon the tenancy shall terminate March 1 following; provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement."

We have already concluded that the tenancy in question here was not or did not convert into a tenancy at will so as to put into application the provisions of Chapter 47–17, NDCC.

In examining other statutory provisions relating to leasing of real property, we find that § 47–16–05, NDCC, provides that:

"A lease of real property, other than lodgings, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the lease."

"Usage" is defined in § 1–01–31, NDCC, as follows:

"Usage is a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties or so well established, general, and uniform that they must be presumed to have acted with reference thereto."

■ Custom and usage must be proved as any other fact. See, *First National Bank of Fargo v. Minneapolis & Northern Elevator Co.*, 11 N.D. 280, 91 N.W. 436 (1902).

■ In *Tong v. Borstad*, 231 N.W.2d 795 (N.D.1975), the court had under considera-

tion a question relating to summer-fallow in which usage and custom were recognized. The court in effect held that where custom or usage on a subject are prevalent they are impliedly incorporated into the agreement to measure the rights of the parties. However, here no evidence was introduced as to usage or custom in the area. The trial court did not, nor was it requested to, take judicial notice of any usage. Consequently reliance upon usage and custom is not appropriate in this instance. The appellant has not contended that usage and custom applies or controls. It would necessarily follow that the reference to usage in § 47–16–05, NDCC, *supra*, would not apply in this instance.

Peterson also argued that he had an automatic renewal under § 47–16–06, NDCC, which provides that:

"If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one year."

As has been mentioned earlier, the lessee, Peterson, was not in the usual customary possession, nor did the lessor, McCarney, accept or receive rent from him. The rent was on a share basis. To invoke the provisions of a statute its terms must be met. Even if the terms are met, it does not require the giving of notice.

In *Merchants State Bank v. Reutell*, 12 N.D. 519, 97 N.W. 853 (1903), the question involved the amount of rent due and owing on a farm lease. Reutell had a lease in writing for one year for the sum of $200 to be paid in advance. The owner of the property sold the land and assigned the lease. The new owner notified defendant Reutell that it had possession of the land and if he desired to lease it for another year to so advise. There were interviews thereafter with reference to the leasing of the land but the parties failed to come to any agreement because the defendant claimed he was entitled to the use of the land for another year under the special proviso of the lease

giving him an option to extend the lease for another year. The court held that the defendant knew he had no new contract with the bank, the new owner of the land. The court followed the rule laid down in McAdam on Landlord & Tenant, Vol. 1 (3d Ed.) § 32, which stated as follows:

"When the tenant remains in possession after the expiration of the original term by permission of the landlord, the implication is that he continues in possession under conditions of the former demise. If the holding over is without the landlord's permission, the landlord may, at his election, treat the tenant as a trespasser by ejecting him from the premises, or hold him as tenant for a renewed term upon the conditions of the prior lease so far as applicable."

The court further observed and concluded that the owner treated the lessee holding over as a tenant and that the option of how the holding over lessee is to be treated rested with the owner and not with the holding over lessee.

In *Knutson v. Knutson*, 76 S.D. 473, 80 N.W.2d 871 (1957), the court had under consideration an oral lease. The oral lease was between father and son. From 1951 until June 18, 1955, the father's death, the son rented the crop and pastured the land under this oral lease. The will of the father was probated and in September 1955 the court set aside the land in question to the second wife of the father.

The son claimed that the second wife orally agreed to lease the land to him for the crop year of 1956. He claimed that on the day the will was admitted to probate he twice asked the second wife of his father if he could have the farm again and she indicated her consent. Thereafter he plowed some 50 acres of the land. In a subsequent conversation in September the son claimed that his father's second wife indicated that he could have the land the following year. However, in October the second wife rented the premises to another person for the year 1956, whereupon this action was instituted. Amongst other things, the son contended that he was a tenant from year to year and

that such tenancy could not be terminated without thirty days' notice. The court observed that there was no evidence showing the duration of the son's original tenancy, and in the absence of such showing it was presumed that the lease was for a period of one year. The court then made reference to the statutory provision, which is identical to our § 47–16–06, NDCC, and stated:

"In construing the above statute in the case of *Banbury v. Sherin* [citation omitted] this court stated: 'Under the provision of the foregoing section, when the lessee held over into the second year, and the lessor accepted rent, the lease was presumed to have been renewed for another year, expiring April 1, 1888, and in the same way it was again renewed until April 1, 1889. In each case it was a lease for one year, and the lessee, by holding over, became a tenant or trespasser at the will of the landlord, until the lessor had accepted rent, and when that was done he became a tenant for another year.' By holding over from year to year since 1951 the plaintiff held possession under a succession of yearly tenancies each having a fixed and definite term expiring in the spring of each year. Notice to terminate plaintiff's tenancy was, therefore, not necessary."

The rationale expressed here applies to the instant case.

In *Banbury v. Sherin*, 4 S.D. 166, 56 N.W. 67, the court, in discussing the South Dakota statute which is identical to § 47–16–06, NDCC, said, "If no notice was necessary to terminate the first lease, then no notice was necessary to terminate the second lease." By referring to the second lease the court had reference to the renewal under the statute.

The Supreme Court of Oklahoma, in *Nichols v. Callaway*, 200 Okl. 328, 193 P.2d 294 (1948), had under consideration the same language as we have in § 47–16–06, NDCC, by reason that the Oklahoma statute was adopted from the Dakota statute. The Oklahoma court followed the reasoning of and adopted the conclusions reached by the South Dakota court.

■ The constructions placed upon the statutory provisions such as those found in § 47–16–06 by South Dakota, Oklahoma, and our Court, clearly show that a notice is not required on the basis that the lease terminates under its own provision and that a renewal, if any exists under the statute, does not acquire any greater status than the original lease. We therefore conclude that the lease in question here did not require a notice of termination on the ground that the lease expired on its own terms.

Section 47–16–15, NDCC, provides as follows:

"A hiring of real property for a term not specified by the parties is deemed to be renewed as stated in section 47–16–06 at the end of the term implied by law, unless one of the parties gives notice to the other of his intention to terminate the same, at least as long before the expiration thereof as the term of the hiring itself, not exceeding thirty days; provided, however, that as to tenancies from month to month, either of the parties may terminate the same by giving at least thirty days' notice thereof at any time, and the rent shall be due and payable to and including the date of termination."

This section has no application to the instant case because it has a term, a one year lease, so specified by the parties by implication. The oral lease was for a year and is, therefore, not for an unspecified term. In addition, § 47–16–15 relates to a deemed renewal as provided for in § 47–16–06, which we have already pointed out does not apply. Consequently, § 47–16–15 does not apply.

In this respect, Peterson concedes that the North Dakota statute of frauds, § 9–06–04(4), NDCC, limits Peterson's interest in the property to a period of one year, and that the lease for the year 1973 would terminate as of the date found by the court, December 31, 1973.

The provisions of § 47–16–20, NDCC, which provides that

"When there is no contract or usage to the contrary, the rent of agricultural and

wild land shall be payable yearly at the end of each year. . . ."

is not of much help in this instance because the rental was only on a crop sharing basis, with each party standing certain expenses.

An examination of the record discloses that the findings of fact are supported by substantial evidence. We agree with the trial court that under the circumstances the lease terminated without any further notice. We, therefore, affirm the judgment of the trial court.

ERICKSTAD, C. J., and PAULSON, VOGEL and PEDERSON, JJ., concur.