## Thomas v. Miller, Appellant.

*Evidence of forgery—Surrounding circumstances.*

On an issue to determine the genuineness of a judgment note dated in February, 1887, and entered up in September, 1890, it is proper for the defendant to show that plaintiff had in her possession a few days before the entry of the judgment, other notes bearing the signature of the same maker, but in blank as to dates and amounts. The possession of such blanks was a highly suspicious circumstance calling for clear explanation.

Plaintiff testified that the note was signed on a Thursday, and that she knew that it was a Thursday because she had looked at the almanac then and there. On cross-examination she was asked why she looked at the almanac. Objection to the question was sustained. *Held*, that the examination of the almanac to fix the date of the note on the very day it purported to have been signed was unusual, and might be suspicious, and that the rejection of the evidence was erroneous.

*Evidence—Deposition.*

Plaintiff's deposition, taken in the lifetime of the defendant who is dead at the time of the trial, is only admissible for plaintiff as a whole.

*Threats against witness.*

It is improper to admit evidence of threats against plaintiff's witness by a person who was not connected with the defendant in any way, to make the latter responsible for the conduct of the person who made the threats.

Argued Oct. 10, 1892. Appeal, No. 85, Oct. T., 1892, by defendant, Phillip Miller, executor of Richard Elliott, deceased, from judgment of C. P. Armstrong Co., Dec. T., 1890, No. 73, on verdict for plaintiff, Sarah A. Thomas. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Issue to determine validity of judgment entered on bill single.

At the trial, before RAYBURN, P. J., defendant introduced evidence which tended to show that the signature to the note on which judgment was entered was a forgery.

When Lee Miller, a witness for defendant, was on the stand, defendant made the following offer:

Mr. King: We propose to show by this witness that he saw in the hand satchel of the plaintiff, Sarah A. Thomas, two notes similar to the one now in suit but entirely in blank, with the exception that the name of Richard Elliott was signed opposite the seal on the lower right hand corner of the note.

Mr. Leason: Please fix a date.

The Court: On the 13th or the 14th of September, 1890?

Mr. King: Well, on the 14th September, 1890.

Mr. Leason: Objected to as incompetent and irrelevant, the note in suit bearing date of the 10th February, 1887, and the proposition being to show a transaction some three years subsequent to the execution of the alleged instrument.

Objection sustained and exception. [1]

The defendant also made this offer:

Mr. Patton: We propose to prove by Mr. Lee Miller, the witness on the stand, that he is a son of Phillip Miller; that he was at home when Sarah A. Thomas was at his father's house, and that she came there on the evening of the 13th of September, 1890, and staid until Monday, and then said she was coming to Kittanning and returned on Monday evening, and she staid there until Wednesday morning following, and that he saw notes in her satchel, blank notes, except the name of Richard Elliott was signed to them on the lower right hand corner. This for the purpose of showing that about two days before the entry of the note in suit, the plaintiff had in her possession other blank notes signed by Richard Elliott and left blank.

Objected to, objection sustained and exception. [2]

On cross-examination Samuel Thomas, a witness for plaintiff, was asked the question: "Q. What day of the week was it that this note was signed? A. It was on Wednesday or Thursday—it was on Thursday. Q. Now, which was it—Wednesday or Thursday? A. Thursday. Q. How do you know that? A. I got the almanac—my sister got the almanac—and looked. Q. When did you look at the almanac? A. Right

there and then.   Q. Why did you look at the almanac right
there and then?"

Mr. McCain: Objected to.   It is not cross-examination.
Objection sustained and exception. [3]

The same witness was one of the subscribing witnesses to the
note.   Defendant made the following offer:

Mr. Patton: We propose to show by the witness that from
the time he left home until he returned he saw no person that
he knew; this is for the purpose of showing the res gestæ, and
circumstances surrounding the alleged forgery of the note.

Mr. Leason : It is objected to as irrelevant, the witness being
under cross-examination and called to prove the execution of a
paper in Armstrong county.   Objection sustained and excep-
tion. [4]

Plaintiff made the following offer:

Mr. Leason: We offer so much of the deposition of Sarah A.
Thomas as relates to the execution of this note as found on the
4th page of the examination in chief between the $+$'s in pencil
marked thereon and in the cross-examination.

Mr. Patton: We have no objection to the deposition as a
whole but we object to their offering parts that suit them and
leaving out the part that does not.

Mr. Leason : We simply offer the part that relates to execu-
tion of this instrument; just the same as if she were a compe-
tent witness.

The Court: It serves the place of a witness, she not being
competent now.

Mr. Patton: We object to the offer unless the entire depo-
sition should go in evidence, or at least that part which refers
to the facts and circumstances surrounding the execution of
the note, as part of the res gestæ, and circumstances surround-
ing the entire transaction.

Mr. Leason: If there is any part of this deposition that he
says I must read let him point it out and the court can say so.
These depositions were filed 7th September, 1891.

The Court: They have a right to offer that part of the dep-
osition—it being on file here—and if there is any part that
you desire to offer you can offer it yourself.   We will overrule
the objection and seal a bill of exceptions. [5]

When David Lowden, a witness for defendant, was on the

stand, he was asked the question : " Q. You know Dr. Elliott here, do you?　A. Yes.　Q. Did he call on you to-day at any time?　A. Yes.　Q. State to the court and jury if he threatened you there with prosecution if you came here and testified?

Mr. Patton : We object to that ; that is not at issue here. Dr. Elliott is not a party to this case.

The Court : We will overrule the objection.　Exception. [6]

The witness testified that Elliott said to him there would be a " reading up " about this.

Verdict for plaintiff and judgment.　Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence, quoting bills of exceptions and evidence.

*W. D. Patton* and *J. P. Colter*, with them *J. W. King*, for appellant.—On a question of fraud great latitude is always allowed : Cover v. Manaway, 115 Pa. 338 ; Rinesmith v. Peoples' Freight R. R. Co., 90 Pa. 262.　As to fourth assignment of error, see Breneman v. Furniss, 90 Pa. 186.

*J. H. McCain*, with him, *J. B. Neale* and *M. F. Leason*, for appellee, cited Meade v. Conroe, 113 Pa. 220 ; Douglass v. Mitchell's Exrs., 35 Pa. 440 ; Phila. City Pass. R. R. v. Henrice, 92 Pa. 431 ; Calhoun v. Hays, 8 W. & S. 127.

OPINION BY MR. JUSTICE MITCHELL, October 31, 1892.

The issue being upon the genuineness of the signature of a judgment note bearing date in February 1887 and entered up in September 1890, defendant's offer to show that plaintiff had in her possession a few days before the entry of judgment on this one, other notes bearing the signature of the same maker, but in blank as to dates and amounts, should have been admitted.　The possession of such blanks was a highly suspicious circumstance, calling for clear explanation, and none the less so, whether plaintiff then had this note or not.　The lapse of time was not important.　If this note was a forgery as defendant claimed, then its having been ante-dated was not only consistent with defendant's theory but was highly probable, and even if it was not antedated the possession of blanks with the maker's signature, when the plaintiff already had this note representing the value of a large part of his estate, called equally for explanation.

The examination of the almanac to fix the date of a paper on the very day it purports to have been signed was unusual at least. How suspicious it may have been would depend on the other circumstances and especially on the reasons assigned in the answer to the very question excluded, why it had been done. The question had theretofore a bearing on the issue, and was legitimate cross-examination.

The same views apply to the fourth assignment. The object of the cross-examination was to test the credibility of the witness's story, and county lines had nothing to do with that issue.

The plaintiff offered parts of her own deposition, taken in the lifetime of the defendant who was now dead. It was only admissible as a whole. It was not competent for her to pick out the portions favorable to herself, and then throw on the defendant the burden of giving her credibility by offering the rest as evidence on his part. The case of Calhoun v. Hays, 8 W. & S. 127, is not in point. The opposite party may always offer such admissions or other evidence of his opponent as suit him. In that case defendant read part of a deposition taken by plaintiff, but it does not follow that plaintiff could have used it for himself in the same way.

It does not appear to have been shown that Dr. Elliott was connected with the defendant in any way to make the latter responsible for the former's conduct. In the absence of evidence on that point it was error to admit threats made by Elliott in regard to the case.

All the assignments of error are sustained.

Judgment reversed and venire de novo awarded.