## MOORE v. UTAH IDAHO CENT. R. CO.

No. 3203.   Decided July 11, 1918.   (174 Pac. 873.)

1. DEPOSITIONS—INTRODUCTION IN EVIDENCE—PART OF DEPOSITION. While neither party may be permitted to read part only of its deposition in chief pertaining to a single subject and waive or reserve the remainder pertaining to the same subject merely because the evidence is unsatisfactory, the subject of its admission is largely in the court's discretion, and each party may generally submit such portion of a disposition as he desires. (Page 377.)

2. TRIAL—RESERVING PART OF DEPOSITIONS FOR REBUTTAL. In an action for wrongful death of a street car employee in a collision, a statement, in a deposition made by the crew of the colliding train, that deceased was four minutes ahead of time, was properly permitted to be reserved for rebuttal by plaintiff. (Page 379.)

3. WITNESSES—REPETITION OF QUESTIONS. It is not error to exclude a question which the witness has previously answered. (Page 379.)

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. In an action for wrongful death of a street car employee, in a collision, admission of testimony as to the speed of the colliding train and its failure to give the usual signals, if error, was not prejudicial, where case

must be decided independent of speed of train or failure to signal. (Page 379.)

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. In an action for wrongful death of a street car employee in a collision with a work train on a single track after leaving a station, it was harmless error to instruct that the doctrine of res ipsa loquitur applied, where under the evidence defendant was guilty of negligence as a matter of law. (Page 381.)

6. MASTER AND SERVANT — INJURIES TO SERVANT — OPERATION OF TRAINS. In an action for wrongful death of a street car employee running a passenger car in a collision on a single track with a work train immediately after leaving a station, evidence that deceased left the station on schedule time and had a right of way over the work train, which attempted to reach the station before deceased's car left, and failed to stop upon discovering the approach of deceased's car, the crew of the work train knowing that deceased did not see it, showed defendant guilty of negligence. (Page 384.)

7. MASTER AND SERVANT—INJURIES TO SERVANT—QUESTIONS OF FACT— CONTRIBUTORY NEGLIGENCE. In an action for wrongful death of a street car employee whose car was struck by a work train, whether deceased was guilty of contributory negligence was under the evidence a question for the jury. (Page 384.)

8. TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE. In an action for wrongful death of a street car employee in a collision with a work train, an instruction that it had been the custom of deceased to act as both motorman and conductor and to leave a certain station at a certain time *held* not erroneous as being based on facts not conclusively established. (Page 386.)

9. MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTIONS. In an action for the wrongful death of a street car employee in a collision, an instruction referring to the fact that deceased was acting both as conductor and motorman was not erroneous as conveying the idea that too much was required of him. (Page 387.)

10. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS—EMPHASIS ON EVIDENCE. Under Comp. Laws 1907, section 3285, prohibiting reversal'for errors not affecting substantial rights, where an instruction singles out specified parts of the evidence, the adverse party cannot complain thereof when the instruction not only singled out matters detrimental to him, but also matters detrimental to his opponent.[1] (Page 387.)

---

[1] *Kent* v. *O. L. & I. Ry. Co.*, 50 Utah, 328, 167 Pac. 669; *Sorenson* v. *Bell*, 51 Utah, 262, 170 Pac. 72.

Appeal from Second District.

11. TRIAL—INSTRUCTIONS—UNDUE PROMINENCE. In an action for wrongful death of a street car employee in a collision between his car and a work train, an instruction, reciting that deceased had the right of way over the line on which his car was being operated, was not erroneous as unduly emphasizing a feature of the case, where the evidence on that point was conclusive. (Page 390.)

12. TRIAL—INSTRUCTIONS—ASSUMPTION AS TO FACTS. In an action for wrongful death of a street car employee in a collision between his car and a work train, an instruction as to ordinary care *held* not erroneous as assuming facts not shown to exist or not in issue. (Page 390.)

13. TRIAL — INSTRUCTIONS — ARGUMENTATIVENESS. In an action for wrongful death of a street car employee in a collision between his car and a work train, an instruction as to ordinary care *held* erroneous as being argumentative. (Page 390.)

14. TRIAL—INSTRUCTIONS—CURE OF ERROR. In an action for wrongful death of a street car employee in a collision between his car and a work train, an instruction as to ordinary care, although argumentative in form, *held* not prejudicial, where other instructions given correctly stated the law. (Page 390.)

15. DEATH—MEASURE OF DAMAGES. In an action for wrongful death of a street car employee, an instruction allowing damages to compensate his widow and deceased's father and mother for the pecuniary loss which they have sustained, considering the age, health, expectation of life, employment, habits, and experience of deceased, was not erroneous.[2] (Page 393.)

Appeal from the District Court of Weber County, Second District; *Hon. A. W. Agee,* Judge.

Action by Ethel R. Moore, Administratrix of the estate of Charles W. Moore, deceased, against the Utah Idaho Central Railroad Company.

Judgement for plaintiff. Defendant appeals.

AFFIRMED.

---

[2]*Corbett* v. *Railroad Co.,* 25 Utah, 455, 71 Pac. 1065; *Rogers* v. *Railroad Co.,* 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Beaman* v. *Mining Co.,* 23 Utah, 149, 63 Pac. 631.

*Boyd, DeVine, Eccles and Woolley* for appellant.

*C. C. Richards* and *Geo. Halverson* for respondent.

THURMAN, J.

Plaintiff, as the administratrix of Charles W. Moore, deceased, hereinafter called the deceased, brought this action to recover damages for the death of her intestate occurring in a railroad accident in May, 1916. At the date of the accident, the deceased was, and for a long time previous thereto had been, in the employment of defendant as conductor and motorman operating one of its cars between Ogden City and the town of Pleasant View in Weber County. The road upon which deceased operated the car was an extension of defendant's street car system in Ogden City. The car was operated by electricity, and the road upon which it ran passed through North Ogden and thence on to Pleasant View, a distance of about three miles. The grade of the road between North Ogden and Pleasant View ranged from zero to over three per cent. At and in the vicinity of the accident it was between two and three per cent., increasing in the direction of Pleasant View. The car driven by the deceased was a passenger car carrying passengers back and forth between Ogden City and Pleasant View, stopping at different stations between those points. Concerning the accident, the complaint alleges, in substance, that the duty of the deceased was to operate the car and collect the fares of passengers, and at about the hour of twelve o'clock noon of the day in question, while he was operating said car northward, and without any notice or warning that the defendant had another motorcar attached to a work train on the same track north of the car deceased was operating, and without notice that the said work train was rapidly approaching the car deceased was upon, the defendant carelessly and negligently caused its said motorcar and work train to violently and with great force and speed collide with and against the car deceased was operating, by means whereof he was crushed, bruised, and mangled, from which

injuries he thereafter died. The defendant, answering, admits the employment, the collision, the injury, and death; but alleges that the collision occurred at about the hour of eleven fifty-five a. m., and denies that defendant was careless and negligent, or that the death of deceased was caused thereby. Further answering, defendant, in substance, alleges that deceased was guilty of contributory negligence, in that he was familiar with the line of railway and knew that the work train was upon the same track as the car he was operating and that the said work train was approaching his car, and, further, that contrary to instructions he then and there ran the car he was operating about five minutes ahead of the time provided in the schedule of the company by which he was directed to run said car, etc. It is then alleged, in substance, that notwithstanding his knowledge of these conditions he carelessly ran his car at a high rate of speed, causing the collision which resulted in his death. The case was tried to a jury. A verdict was rendered for plaintiff and judgment entered. The defendant appeals and assigns as error rulings of the court respecting the admission and exclusion of evidence, errors of the court in instructions to the jury, and refusal of instructions requested by defendant.

During the course of the trial, plaintiff offered in evidence the deposition of one Walter Williams, which, among other things contained certain interrogatories and answers taken by plaintiff to be used in rebuttal of anticipated testimony on the part of defendant. Plaintiff, having read to the jury the other portions of the deposition taken in chief, reserved the portions intended to be used in rebuttal. Defendant insisted that plaintiff should read all the examination in chief, and assigns as error the ruling of the court sustaining plaintiff's contention. The portions of the testimony reserved by plaintiff were of doubtful competency in any event at that stage of the case. They related to a conversation between the motorman of the work train and another person in presence of the witness shortly after the accident. One portion of the conversation was a statement that the deceased was "four minutes ahead of time." This statement was self-serving and

incompetent unless it was a part of the res gestæ. In fact, the questions leading up to the statement quoted were objected to by defendant on the grounds that they were incompetent and not in rebuttal of any testimony that had been introduced. In any event, if the testimony was competent for any purpose other than rebuttal, it was matter of defense, and defendant had the undoubted right to read it to the jury when putting in its defense. Of course, neither party should be permitted to read part only of its deposition in chief pertaining to a single subject and waive or reserve the remainder pertaining to the same subject, merely because the evidence is unsatisfactory. The whole matter, however, is largely in the discretion of the court. Subject to the exception above noted, we are of the opinion that each party has the right to introduce such portions of the deposition as he desires, and we believe these views are sustained by the great weight of authority. Respondent has cited a great number of authorities, in fact too numerous to mention in this opinion. The following will suffice: 9 A. & E. Ency. L. (2d Ed.) 365; Jones on Evidence, section 171 at page 884, and section 685 at page 169; 4 Ency. Ev. 527-532; 13 Cyc. 985; *Crotty* v. *Railway Co.*, 169 Fed. 593, 95 C. C. A. 91; *Morrison* v. *Wisconsin, etc., Co.*, 59 Wis. 162, 18 N. W. 16; *H. Scherer & Co.* v. *Everest*, 168 Fed. 822, 94 C. C. A. 346; *Watson* v. *St. Paul, etc., Co.*, 76 Minn. 358, 79 N. W. 309; *Bowen v. Durant*, 25 N. D. 11, 140 N. W. 729; *First Nat. Bank* v. *Minnesota & N. E. Co.*, 11 N. D. 280, 91 N. W. 440; *Byers* v. *Orensstein*, 42 Minn. 386, 44 N. W. 129; *Wanamaker* v. *Megraw*, 168 N. Y. 125, 61 N. E. 112; *Forbes* v. *Snyder*, 94 Ill. 374.

Appellant cites and relies on the following: 13 Cyc. 983; Comp. Laws Utah 1907, section 3459; *Bank of Orland* v. *Finnell*, 133 Cal. 475, 65 Pac. 976; *Cook Brewing Co.* v. *Ball*, 22 Ind. App. 656, 52 N. E. 1002; *Kilbourne, Jenkins & Co.* v. *Jennings*, 40 Iowa, 473; *Citizens' Bank* v. *Rhutasel*, 67 Iowa, 316, 25 N. W. 261; *Hammatt* v. *Emerson*, 27 Me. 308, 46 Am. Dec. 598; *Linfield* v. *Old Colony R. C.*, 10 Cush. (Mass.) 562, 57 Am. Dec. 124; *Hamilton Brown Shoe Co.* v. *Milliken*, 62 Neb. 116, 86 N. W. 913; *U. S. Trust Co.* v. *Lanahan*, 50 N. J.

Eq. 796, 27 Atl. 1032; *Boney* v. *Boney,* 161 N. C. 614, 77 S. E. 784; *First Nat. Bank* v. *Minneapolis & N. Elevator Co.,* 11 N. D. 280, 91 N. W. 436; *Gussner* v. *Hawks,* 13 N. D. 453, 101 N. W. 898; *Thomas* v. *Miller,* 151 Pa. 482, 25 Atl. 127. The cases cited by appellant do not bear out its contention when applied to the facts in the instant case.

The court did not err in permitting plaintiff to reserve the testimony intended for rebuttal.

The witness Peterborg, superintendent of the work being done for which the work train was used, was sworn as a witness for defendant, and, it appearing that he was riding on the work train at the time of the collision, he was asked by defendant the following question:

"I will ask you to state whether or not in the ordinary running of your car, and with the time you and Mr. Kline had, as shown by your watches, state whether or not you had ample time to have made the switch at North Ogden before Moore could leave at twelve o'clock?"

The question was objected to by respondent and the objection sustained. The record discloses that the witness had already answered affirmatively a question substantially to the same effect. There was no error in the ruling of the court.

Another witness was permitted, over defendant's objection, on cross-examination, to testify as to the speed of the work train and its failure to give the usual signal at a point about a half mile above the place of the accident. This is assigned as error. It is very questionable whether or not the admission of the testimony was error in view of the examination in chief; but, assuming that it was, it was not prejudicial. This case, as will be seen hereinafter, must be decided entirely upon what occurred some considerable distance below that point and entirely independent of the speed of the train or the failure to signal at the point concerning which the witness was permitted to testify. The error, if any, was therefore harmless.

We now come to what is perhaps the most serious question presented by appellant's assignment of errors. The fifth instruction given to the jury by the court reads as follows:

"I further charge you, gentlemen of the jury, that the collision in question was not the result of an unavoidable accident, or what is usually called a mere accident, but was the result of negligence upon the part of the person or persons operating and controlling one or both of the cars in question. Where two cars running in opposite directions on the same track meet in collision, the mere fact of the occurrence of the collision under such circumstances raises the presumption of negligence upon the part of some one or more of the persons in charge of the operation of one or both of such cars. But while the occurrence of the collision in this case raises the presumption that some person or persons in charge of the operation of one or both of the cars in question was guilty of negligence, it does not raise any presumption as to who among such persons was guilty of negligence; but the question as to who was guilty of negligence, whether the persons in charge of the work train or the deceased, or both, which resulted in the collision between the cars in question, is one of fact which must be determined by you from a preponderance of all the evidence and from the facts and circumstances proven upon the trial.

"Therefore, if you find from a preponderance of all the evidence in the case that the person or persons in charge of the running and operation of the work train was or were negligent, in any one or more of the particulars charged as negligence in the plaintiff's complaint, and that such negligence was the proximate cause of the collision and the consequent death of the deceased, Charles W. Moore, without fault or negligence on his part proximately contributing thereto, then your verdict should be in favor of the plaintiff. On the other hand, if you find from a preponderance of the evidence in the case that the deceased, Charles W. Moore, was negligent in any one or more of the particulars mentioned in the answer of the defendant, and that such negligence upon the part of the said Moore caused or proximately contributed to the injury and death, then the plaintiff cannot recover, even though you should also find that the defendant, its agents and servants engaged in the operation of said train, were also guilty of negligence which contributed to his injury and death. Of

course, if the defendant's agents and servants in charge of the operation of said work train were not guilty of any negligence charged in the complaint, the plaintiff cannot recover, and your verdict should be for the defendant.''

It will be seen, from the instruction quoted, that the court instructed the jury as a matter of law that the collision was not the result of an unavoidable accident, but was the result of negligence on the part of the person or persons operating and controlling one or both of the cars in question. The court then proceeds to tell the jury that, where two cars running on the same track meet in collision, the mere fact, under such circumstances, raises the presumption of negligence upon the part of some one or more of the persons in charge of the operation of one or both of such cars. Thus, it will be seen, the court applies to the case the doctrine of res ipsa loquitur. In other words, the fact alone that the accident happened implies negligence. The court does not undertake to say who was negligent, whether the deceased conductor or the persons operating the other train, but leaves that to the jury to determine. Appellant challenges the validity of the instruction and vigorously contends that it is contrary to law in cases of this kind, and refers us to many authorities in support of its contention, especially in actions between master and servant, as in the case at bar. We do not deem it necessary to review those cases, for we are inclined to the opinion that, ordinarily, in such cases, with some exceptions not necessary to enumerate here, the doctrine of res ipsa loquitur does not apply. Neither do we believe the court was right in applying it to the present case, for, as urged by appellant, it might be possible that such conditions could exist that the happening of the accident alone would not be either conclusive or prima facie evidence of negligence. But while we are of the opinion that the court erred in his statement of the law to the jury in the respect mentioned, it is nevertheless incumbent upon the court to determine whether or not the error was prejudicial. If it can be determined from the evidence as matter of law that the defendant was negligent, without which negligence the accident would not have oc-

curred, then it is of no consequence that the court misapplied the doctrine of res ipsa loquitur for the result in either case must be the same.

The fact is conclusive, both under defendant's answer and the evidence in the case, that the schedule time of the deceased conductor at North Ogden station, either as a matter of rule or custom, was twelve o'clock noon of each day. It is likewise conclusive, under the evidence, that the conductor left North Ogden station at that time going north on the day of the accident. We may also add at this point that the evidence conclusively shows that the work train had no schedule time and that the deceased conductor's car had the right of way over the track from North Ogden station on to Pleasant View. Some contention is attempted by appellant to the effect that these facts do not conclusively appear, but such contention should not prevail. The testimony as to these matters, with the exception of the time when the deceased left North Ogden on the day of the accident, comes entirely from defendant's witnesses or its answer filed in the case, and as to the time of his leaving North Ogden the testimony introduced by plaintiff is uncontroverted. Starting, then, with these facts either alleged by the defendant or not denied, we will next consider the conduct of the operatives on both the deceased conductor's car and the work train as they approached each other just before the collision.

As before stated, the deceased conductor left North Ogden going north at twelve o'clock noon. At eleven fifty-six a. m., of the same day, the work train was on the same track going south' at a point opposite what is known in the case as the "Canning Factory." At that point Peterborg, superintendent of the construction work, riding on the work train with his men, compared the time of his watch with that of the motorman on the work train and found the time, as above stated, to be eleven fifty-six a. m. There was a switch or siding at that point, and their object in comparing time was to determine whether or not they had better turn in at that switch or try to make the switch just north of North Ogden station. The distance to North Ogden station from where they compared

watches was about 1,800 feet. They came to the conclusion they had time to make the North Ogden switch and moved on in that direction. There is no question but that they figured on the conductor's time of leaving North Ogden as twelve o'clock. They understood it and were trying to govern themselves accordingly. To meet the deceased conductor's car at the North Ogden switch, the work train would have to average at least four miles an hour with no time whatever for backing into the siding. At a distance of between 600 and 800 feet between the approaching cars, the operatives on the work train saw the trolley of the conductor's car above the intervening obstacles, and at a distance of 600 feet saw the entire car of the deceased conductor approaching on the same track. At a distance of 400 or 500 feet they saw the conductor and saw that he was not looking forward. It is inconceivable why, at that point, they did not stop the train. They knew they could not pass on the same track. They knew there was no switch or siding intervening. They knew the conductor of the approaching car had the right of way. While they applied the brakes, and, as they claim, slowed down, they did not apply the emergency until within seventy-five or one hundred feet of the approaching car. Another fact is prominent and not in dispute. The deceased conductor appeared to the operatives of the work train to be engaged, looking at his book, counting tickets, or something of that kind. In any event, he did not look forward. He evidently did not see them; but they saw him, and saw that he did not see them. If it were not that these facts are uncontradicted in the record, it would be almost unbelievable that the accident could have happened in the way it did. Another fact may be mentioned. At a distance of seventy-five or one hundred feet between the approaching cars, two or three of the men on the work train jumped off and ran a few steps by the side of the train, thus showing that the train, right at the time of the accident, was moving nearly or quite four miles an hour, the speed, as before stated, necessary to make the North Ogden switch. The fact that the trains telescoped and could not be pulled apart with the motor power available, or by teams used for that purpose,

has some bearing upon the question of the speed of one or both of the trains.

These, in substance and brief, constitute the facts relating to the accident as we read the record. Even if we eliminate from all consideration the questions as to whether or not the schedule time of the deceased conductor at North Ogden was twelve o'clock noon, and whether or not he was there at that time and had the right of way from there on, still the uncontroverted facts remain that the defendant's operatives running the work train saw the deceased's car and the deceased himself, and saw that he seemed to be engaged and did not see them, at such a distance between them and the conductor's car that they, in the exercise of ordinary care, could have stopped their train and avoided the accident. This is the inevitable conclusion we feel compelled to draw from the facts disclosed by the record, and we believe that all reasonable men would arrive at the same conclusion. In such circumstances it is our plain duty to declare as matter of law that the defendant was guilty of negligence.

Respondent's counsel refer us to many authorities, some of which apply the doctrine of res ipsa loquitur to actions between master and servant. As we have deemed it our duty to determine the question of the defendant's negligence on other grounds, it is not necessary to review these authorities.

The question still remains as to whether or not the deceased himself was guilty of negligence which contributed to his injury and death. It is settled law in this state, and in most jurisdictions of the country, that, however negligent a defendant may be in a case where an accident results in injury, the plaintiff in such action cannot recover if his own negligence, or that of the person he represents, contributes to the injury. The question of the deceased's negligence in the present case was left to the jury for their determination, and we think under the evidence it was undoubtedly a question for the jury to determine. The jury found that the deceased was not negligent and accordingly awarded damages to the plaintiff. But appellant contends that in respect to the question whether or not the deceased

was guilty of negligence which contributed to his injury the court, in its instructions, misdirected the jury, assuming facts which were not in issue and other facts which were not proven, and otherwise evinced a bias prejudicial to the defendant.

The first instruction challenged in this regard is instruction No. 6. A part only of the instruction is excepted to, but we quote it in its entirety, placing in italics the part assigned as error:

"As stated elsewhere in these instructions, it was the duty of the deceased, Charles W. Moore, and also the persons in charge of the work train, at the time and place in question, to use ordinary care in the running of the respective cars to avoid a collision; that is, such care as an ordinarily prudent person would use under the circumstances disclosed in this case. In determining whose negligence caused the collision in question, you should take into consideration all the facts and circumstances appearing from the evidence in the case and the situation of the deceased and the persons on the work car. *You will bear in mind that the undisputed evidence in the case shows that, for a considerable length of time prior to the collision, the defendant had been operating only one car regularly over its line of road between North Ogden and Pleasant View, and that the deceased had been employed as and required to perform the duties of both conductor and motorman on said car, and that, while there is no evidence of any fixed schedule having been adopted and promulgated by the defendant company fixing the time for leaving North Ogden, it had been the custom and practice for a considerable length of time for the deceased to leave the stopping place at North Ogden, on one of his daily trips to Pleasant View, at twelve o'clock noon of each day, and that after that time he had the right of way over said line. You should also bear in mind that the deceased knew that the work car was on the line somewhere north of North Ogden.*

"Under these circumstances, I charge you, gentlemen of the jury, that the defendant, its agents and servants in charge of the work car, were charged with notice that the passenger car would, if running on its usual time, leave the stopping place

*at North Ogden at twelve o'clock noon, but not earlier, and that after that time it had the right of way, and would probably be on its way from North Ogden to Pleasant View.*

"It is for you to determine from all these facts and circumstances, together with all other facts and circumstances appearing from all the evidence in the case, whether or not the deceased in leaving North Ogden, and while running his car, used such care in the operation of said car as an ordinarily prudent person would have used under such circumstances. If you find from a preponderance of all the evidence that he did, he was not guilty of negligence, and the plaintiff should be entitled to recover, and you should return a verdict in her favor. If you find from a preponderance of all the evidence that he did not use such care and diligence in leaving North Ogden as he did, and in the operation of his said car, as an ordinarily prudent person would have used under such circumstances, then he was guilty of negligence, and if that negligence caused or proximately contributed to his injury and death the plaintiff cannot recover, and you should return a verdict in favor of the defendant."

Appellant's objections to the language specifically objected to are that the court told the jury that the deceased had been employed as and required to perform the duties of both conductor and motorman on said car, and that it had been the custom and practice for a considerable length of time for the deceased to leave the stopping place at North Ogden going to Pleasant View at twelve o'clock noon of each day, and that after that time he had the right of way over said line. And, further, defendant excepts to the language to the effect that the defendant, its agents and servants in charge of the work car, were charged with notice that the passenger car, if running on its usual time, would leave the North Ogden station at twelve o'clock noon, and that after that time it had the right of way and would probably be on its way from North Ogden to Pleasant View. These statements are challenged on the alleged ground that the facts were not conclusively established. We have already found to the contrary as to most, if not all, of these facts, and we be-

lieve our finding is fully justified. In the first place, defendant in its answer alleged that the accident occurred at eleven fifty-five and that deceased was running about five minutes ahead of time. We have shown that at the canning factory Peterborg, the superintendent, and Kline, the motorman of the work train, compared their time to see if they could meet the conductor at the North Ogden switch at twelve o'clock. They found that they had four minutes and concluded they had time. It cannot therefore be successfully disputed that the conductor's time of leaving North Ogden was twelve o'clock noon, and that on the day of the accident he left at that time. Neither can it be successfully disputed that from thence on to Pleasant View he had the right of way. This was positively testified to by Peterborg and not challenged or contradicted by any other evidence in the case. As to the fact that the deceased conductor was both motorman and conductor, the fact is alleged and admitted in the pleadings. Neither can the fact be challenged that the defendant, its agents and servants in charge of the work car, were charged with notice that the passenger car would, if running on its usual time, leave the stopping place at North Ogden at twelve o'clock noon. This is conclusively shown by Peterborg and Kline comparing their watches at the canning factory at eleven fifty-six a. m. for the purpose of ascertaining if they could meet the conductor's car at North Ogden switch at twelve o'clock noon. The instruction is therefore not subject to criticism on the ground that it assumes the existence of facts in dispute.

Appellant objects also on the further ground that the instruction referring to the fact that the conductor was both conductor and motorman of the passenger car he was running was prejudicial, in that it conveyed the idea that too much was required of the conductor. We think the most that was intended to be conveyed by the language of the court was that the duties of the conductor were dual, and that that was a matter the jury had a right to consider.

The principal ground of objection, however, as we view appellant's argument, is that the language of the court singled out and specified parts of the evidence and told

the jury to bear them in mind. We concede that in this respect it is not a model instruction. As said by this court in *Kent* v. *O. L. & I. Ry. Co.*, 50 Utah, 328, 167 Pac. at page 669:

"It is always dangerous for a court to single out specific things or acts in charging the jury."

This is undoubtedly correct. To single out specific things or acts detailed in the evidence is to unduly emphasize them and probably lead the jury to attach undue importance to such matters as are specifically mentioned; but in the present case the court can hardly be charged with prejudice or bias against the defendant, for it not only singled out matters which might make against the defendant in the case, but also matters detrimental to the plaintiff. For instance, the court said:

"You should also bear in mind that the deceased knew the work car was on the line somewhere north of North Ogden."

This language was excepted to by plaintiff, and, if plaintiff had not obtained a favorable verdict, no doubt she would now be in this court making a similar contention to that now being made by appellant. Again, the court calls attention to the fact that the leaving time of the deceased at North Ogden was "twelve o'clock noon, *not earlier.*" (Italics ours.) This was significant in conveying the idea to the jury that if the deceased left earlier than twelve o'clock he would be in fault. Again, in the same instruction, after referring to the question as to whether or not the deceased used due care in the operation of his car, the court says:

"If you find from a preponderance of all the evidence that he did, he was not guilty of negligence," etc.

This was prejudicial to the plaintiff for the reason that the law does not impose upon the plaintiff the duty of proving by a preponderance of the evidence that the deceased was not guilty of negligence. *Sorenson* v. *Bell*, 51 Utah, 262, 170 Pac. 72. So that while the instruction, improperly as we believe, called the attention of the jury specifically to certain facts, appellant cannot complain that the language used indicated prejudice against the defendant.

As we view this question, the jury was bound to find that the deceased's time at North Ogden was twelve o'clock noon; that he was there at that time on the day of the accident, and from thence on to Pleasant View had the right of way. The jury also, under the evidence, was bound to find that the deceased knew the work train was on the line somewhere between North Ogden and Pleasant View, and also that the operatives of the work train were charged with notice of those matters. Inasmuch as these pertinent and vitally material facts were known to the jury before the court called them to its attention, we cannot see how appellant was prejudiced in any substantial right by the instruction given. For the same reason, if the situation were reversed and respondent were appealing from a judgment of no cause of action, our ruling would of necessity be against respondent if relying upon her exception to the language above referred to.

While, as stated, it is not such an instruction as can be commended as a model, nevertheless, if this court should reverse every case where instructions are vulnerable in some respect, only a small percentage of judgments resulting from jury trials could be affirmed. We cannot reverse judgments for error that is not prejudicial. "No exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting." Comp. Laws Utah 1907, section 3285.

Appellant also excepted to part of the language used by the court in instruction No. 9, and assigns it as error. Again we quote the entire instruction and italicize the language to which exception was taken:

"You are instructed that, in the performance of their duties in the operation of their cars respectively, it was the duty of the said Charles W. Moore, and also of the persons in charge of the operation and control of the south-bound work car, to use ordinary care to ascertain if there was any car approaching in the opposite direction, and to avoid a collision with any car that might be so approaching. What would be ordinary care under certain circumstances might be negligence in other and different circumstances. *If a person engaged in the operation*

*of a car has the right of way over the line of railroad over*
*which his car is being operated, and has no reason to suppose*
*or expect that another car is being run and operated over the*
*same track at the same time and in the opposite direction and*
*near enough to the car which he is operating to render a colli-*
*sion probable, ordinary care would not require him to use as*
*much diligence to ascertain if any car was approaching from*
*the opposite direction as it would if he knew that it was time,*
*or so near the time, for a car to be approaching from the oppo-*
*site direction as to render it probable that such car might be*
*approaching and might be met at any moment.* In other
words, the care to be used depends upon the circumstances of
the situation, and the dangers which should be reasonably
anticipated.''

Appellant objects to the language italicized on several
grounds: (1) Because it unduly emphasizes the feature of
the right of way; (2) it assumes facts not shown to exist;
(3) it calls attention to particular matters, some in issue
and some not; (4) it is argumentative. It will appear
from what we have already said the language is not
objectionable on the ground that the facts did not exist. The
car of the deceased conductor, as before stated, under the
uncontroverted evidence, did have the right of way at the
time of the collision. The operatives of the work train knew
he had the right of way, and the evidence upon that point is
conclusive. They knew he had the right of way as evinced by
the positive testimony of Peterborg and as recognized at the
canning factory when he and Kline compared time and figured
on reaching the North Ogden switch by twelve o'clock. Having
the right of way as against the work train and knowing there
was no passenger train on the line north of him, it follows as
a logical conclusion he had no reason to expect a collision.
These facts also were well known to the jury, if, as we suppose,
they were reasonable men of ordinary experience in human
affairs and had intelligence enough to understand the evi-
dence. It follows also that, under these circumstances, the
deceased would not be required to keep as vigilant an outlook
ahead as he would have done if he had had reason to believe

there might be another car or train on the line coming towards him. The statement of facts by the court was correct; its deductions from the facts stated were warranted, but the language was argumentative, and therefore objectionable on that ground. But again we are confronted with the questions: Was the language prejudicial? Was the defendant prejudiced in a substantial right? It was the duty of the jury, in their deliberations, to consider these facts and draw these conclusions in arriving at their verdict. Did the court, then, commit reversible error in giving the instruction? It is not as if the court had instructed the jury that it might consider matters that were improper for their consideration. That is not the vice of the instruction. Everything the court stated in the language excepted to was perfectly proper for the jury to consider. The objectionable feature is, it was argumentative in form, and, if the court had not otherwise fairly instructed the jury on the questions of contributory negligence, such an instruction as the one complained of might constitute reversible error. But, as will be seen, the first part of this same instruction correctly declares the law as to the duty of both deceased and defendant in respect to this very matter. It is made plain that each should use ordinary care to ascertain if a car was approaching from the opposite direction.

We have also seen that in the first part of instruction No. 6 the court properly charged the jury on the questions of negligence and contributory negligence, and there told the jury, in considering the question as to whose negligence caused the collision, they should consider all the facts and circumstances connected with the case; then, after using the language quoted, to which objection was made, in the same instruction the court reiterates its admonition, telling the jury it should consider not only the matters to which it had specifically called their attention but all the facts and circumstances disclosed by the evidence. In instruction No. 5, also, it appears the court gave full, fair, and correct instruction on the question of negligence and contributory negligence, and instruction No. 10 bears strongly upon the same question and is entirely fair and impartial. Finally, in instruction No. 13, the court says:

*"You should weigh the evidence carefully and consider all of it together. You should not pick out any particular fact in evidence or any particular statement of any witness and give it undue weight.* You should give such weight to inferences from the facts proven as in fairness you think they are entitled to.

*"You should consider all the evidence impartially, fairly, and without prejudice of any kind,* and from such consideration, in connection with the instructions given you by the court, you should reach such a verdict as will do justice between the parties."  (Italics ours.)

Everything considered, the court does not feel justified in holding that the language complained of by appellant constitutes reversible error. To so hold, in our opinion, would be in disregard of the statute heretofore quoted, which we are in duty bound to give full force and effect.

Appellant presented many requests for instructions relating principally to the questions of negligence and contributory negligence. These requests were refused by the court and error assigned. Many of the requests refused were afflicted with the same infirmity of which appellant complains. They singled out and made prominent certain features of the evidence and to some extent were argumentative. Had they been given by the court and error predicated thereon by respondent, and respondent had appealed, our position would necessarily have been the same as it is now. We could justly hold that such instructions were improper but not reversible error. Having, however, been refused by the court, there was no error in doing so. Besides this, the requests that were proper were fairly covered by the instructions given to the jury.

The complaint alleged that deceased died without issue surviving him, but left surviving him as his only heirs at law his widow and his father and mother. Some testimony was introduced concerning the conduct of deceased towards his father and mother to the effect that when they needed help he always helped them and visited them daily; that he was always on hand to give assistance in sickness, etc. Upon the question of

damages the court instructed the jury, among other things, as follows:

"You cannot allow her any damages for mental suffering of herself or the parents of the deceased, nor anything as a solace for their feelings of sorrow or grief, *but only such damages as will compensate her and the father and mother of the deceased for the pecuniary, or money, loss, if any has been proven, which they have sustained by the reason of the death of said deceased.* But in arriving at the amount of such damages, you may take into consideration the age, health, expectation of life, employment, business capacity, habits, and experience of the deceased, his ability and disposition to labor and earn money, and also the pecuniary loss by the widow, if any such loss appears from the evidence, by reason of the loss of the society and companionship of her husband." (Italics ours.)

Appellant excepted to the words quoted, and especially to those italicized. We are referred to no authority which sustains its exception. We believe the instruction is fully justified under the decisions of this court. *Corbett* v. *Railroad Co.*, 25 Utah, 455, 71 Pac. 1065; *Rogers* v. *Railroad Co.*, 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Beaman* v. *Mining Co.*, 23 Utah, 149, 63 Pac. 631; and earlier cases.

The court did not assume that any pecuniary or money loss had been sustained, but under the evidence, properly left the question to the jury.

We find no reversible error. The judgment of the trial court is affirmed, at appellant's cost.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.